[No. S052588. Aug. 27, 1997.]

JOAN STEVENSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HUNTINGTON MEMORIAL HOSPITAL, Real Party in Interest.

COUNSEL

Antonio M. Lawson, Traber, Voorhees & Olguin, Bert Voorhees, Fernando M. Olguin and Theresa M. Traber for Petitioner.

Joseph Posner, Cathy Ventrell-Monsees, Laurie A. McCann and William C. Quackenbush as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Fonda, Garrard, Hilberman & Davis, Peter M. Fonda, Laurie DeYoung, O'Flaherty & Belgum, Brian P. Barrow, Todd E. Croutch and Robert M. Dato for Real Party in Interest.

Gibson, Dunn & Crutcher, David A. Cathcart, Mark Snyderman, Crosby, Heafey, Roach & May, James C. Martin, Anna Segobia Masters and Ellen R. Brostrom as Amici Curiae on behalf of Real Party in Interest.

OPINION

**KENNARD, J.**—California statutory law prohibits employers from discriminating against older workers (statutorily defined as workers over the age of 40) because of their age. Specifically, the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) makes it "an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action." (*Id.*, § 12941, subd. (a).)[1] The FEHA defines an "employer" as a person "regularly employing five or more persons." (*Id.*, § 12926, subd. (d).)

---

[1] In full, Government Code section 12941 provides:

"(a) It is an unlawful employment practice for an employer to refuse to hire or employ, or to discharge, dismiss, reduce, suspend, or demote, any individual over the age of 40 on the ground of age, except in cases where the law compels or provides for such action. This section shall not be construed to make unlawful the rejection or termination of employment where the individual applicant or employee failed to meet bona fide requirements for the job or position sought or held, or to require any changes in any bona fide retirement or pension programs or existing collective-bargaining agreements during the life of the contract, or until January 1, 1980, whichever occurs first, nor shall this section preclude such physical and medical examinations of applicants and employees as an employer may make or have made to determine fitness for the job or position sought or held.

"Promotions within the existing staff, hiring or promotion on the basis of experience and training, rehiring on the basis of seniority and prior service with the employer, or hiring under

In *Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074] (*Jennings*), we held that an older worker who has been discharged because of age by an employer having fewer than five workers (and thus not subject to the age discrimination prohibition of the FEHA) may not bring a tort claim for wrongful discharge in violation of public policy. But we specifically left for future determination the question whether an older worker may assert such a common law claim against an employer with five or more workers. (*Id.* at p. 130.) The issue we left open in *Jennings* we will decide here.

We conclude that, as applied to employers regularly employing five or more workers, the policy prohibiting employment discrimination against older workers satisfies each of the criteria this court has established as necessary to support a common law action for tortious wrongful discharge: The policy has been articulated in a statute (the FEHA), benefits society at large, is "substantial" and "fundamental," and was well established at the time of the discharge here. We further conclude that, because the FEHA expressly does *not* preempt *any* common law tort claims, the FEHA's age discrimination remedies are not exclusive and do not bar a tort claim for wrongful discharge in violation of the public policy against age discrimination.

## I. Facts and Procedural History

Because this matter comes to us on demurrer, we take the facts from plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether plaintiff has stated a viable cause of action. (*Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 747 [7 Cal.Rptr.2d 808, 828 P.2d 1195].)

When she was discharged at the age of 60, plaintiff Joan Stevenson (Stevenson) had worked as an employee of real party in interest Huntington Memorial Hospital (the Hospital) for over 30 years, performing her job competently and receiving commendations and pay increases. During 1992, shortly before her discharge, Stevenson had been on a medical leave of absence approved by the Hospital. According to the Hospital's personnel policies and procedures manual, upon return from an approved medical leave of absence for occupational or nonoccupational injury or illness an employee

---

an established recruiting program from high schools, colleges, universities, and trade schools shall not, in and of themselves, constitute a violation of this section.

"(b) This section shall not limit the right of an employer, employment agency, or labor union to select or refer the better qualified person from among all applicants for a job. The burden of proving a violation of this section shall be upon the person or persons claiming that the violation occurred."

is guaranteed reinstatement to the same job classification and shift. The manual further states that if it is "not possible for business reasons to guarantee reinstatement to the same job classification and shift, an employee will be reinstated to any available job . . . which, in the judgment of the hospital, the employee is qualified to perform" and "will be given the opportunity to be reassigned to that same job classification and shift when next available."

On November 6, 1992, the Hospital informed Stevenson that her right to reinstatement would be guaranteed until December 31, 1992. On an unspecified day during November 1992, Stevenson notified the Hospital that she was ready to return to work. At that time, the Hospital told Stevenson that she would not be allowed to return to her original job classification and shift, and it denied her reinstatement "to another job classification and shift with opportunity for later reassignment to her original job classification and shift."

The Hospital terminated Stevenson's employment "some time after December 31, 1992." It did so "because of [Stevenson's] age and to deny her the opportunity to obtain benefits to which she was entitled and eligible as a 30-year employee."

On December 30, 1993, Stevenson filed a wrongful termination action against the Hospital. Her first amended complaint, which is the pleading at issue here, contains allegations grouped into four alleged causes of action: (1) breach of employment contract; (2) wrongful discharge in violation of a public policy against terminating an employee for taking an approved medical leave; (3) wrongful discharge in violation of a public policy against age discrimination; and (4) breach of the implied covenant of good faith and fair dealing.

The Hospital demurred to Stevenson's first amended complaint in its entirety. Regarding the first and fourth causes of action (the contract claims), the Hospital asserted that Stevenson had not sufficiently alleged the existence of a written, oral, or implied contract. As to the second and third causes of action (the tort claims), the Hospital maintained that fundamental public policy was not violated by either age discrimination in employment or termination of employment for taking medical leave. These tort claims, according to the Hospital, were also barred because Stevenson had not exhausted her statutory remedies under the FEHA.

The trial court overruled the Hospital's demurrer with respect to the contract claims. As to the tort claims for wrongful discharge in violation of

fundamental public policy, the trial court sustained the demurrer without leave to amend. Stevenson petitioned the Court of Appeal for a writ of mandate to set aside this latter part of the trial court's order.

The Court of Appeal issued an alternative writ but ultimately denied Stevenson's petition. The court devoted a large portion of its opinion to the central question of whether Stevenson's wrongful discharge claim was supported by a fundamental public policy against age discrimination in employment. Although recognizing that we had expressly left this issue open in *Jennings, supra,* 8 Cal.4th 121, the Court of Appeal nonetheless viewed the logic of *Jennings* as leading ineluctably to the conclusion that age discrimination in employment does not violate any fundamental public policy of this state, no matter how many employees an employer regularly employs. The Court of Appeal ended its opinion by "respectfully urg[ing] the Supreme Court to explore further this troubling area of the law at its next opportunity." We granted Stevenson's petition for review.[2]

## II. Discussion

### A. *Origins of the Tortious Discharge Claim*

In California, an employment relationship may generally be terminated by either party "at will."[3] This means that, unless they agree otherwise, either party may terminate the employer-employee relationship without cause. (Lab. Code, § 2922.) On occasion, employers have abused the at will relationship by discharging employees for reasons contrary to public policy as expressed in statutory or constitutional mandates. In response, courts have created an exception to, or qualification of, the at will employment principle. The exception is this: An employer may not discharge an at will employee for a reason that violates fundamental public policy. This exception is enforced through tort law by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental public policy.

---

[2]As stated in the petition for review, the issue presented here is "[w]hether age discrimination in employment violates a fundamental public policy thereby permitting a common law cause of action for tortious wrongful discharge." Stevenson has abandoned her second cause of action—wrongful discharge in retaliation for taking an approved medical leave.

[3]Firmly entrenched in traditional American common law, the at will doctrine is a particular application of the more general doctrine of freedom to contract. An 1877 law treatise put it this way: " 'With us, the rule is inflexible that a general or indefinite hiring is, prima facie, a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. . . . [A]n indefinite hiring . . . is determinable at will by either party.' " (Comment, *The Public Policy Exception to the Employment-at-Will Doctrine: Its Inconsistencies in Application* (1994) 68 Tul. L.Rev. 1583, 1586, quoting Wood, A Treatise on the Law of Master and Servant (1877) § 134, p. 272.)

The first California appellate court decision to recognize a tortious discharge claim was *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25] (*Petermann*). In *Petermann*, the plaintiff sued his employer after he was discharged for refusing to perjure himself during an investigative hearing before the Legislature. The trial court granted the employer's motion for summary judgment based on the parties' at will employment relationship. (*Id.* at p. 187.) The Court of Appeal reversed, stating: "It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge an employee . . . on the ground that the employee declined to commit perjury." (*Id.* at pp. 188-189.) The *Petermann* court noted that Penal Code section 118, prohibiting perjury, derives from the general principle that "[t]he presence of false testimony in any proceeding tends to interfere with the proper administration of public affairs and the administration of justice." (*Petermann, supra,* at p. 188.)

This court first addressed the tortious discharge claim in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*). There, the plaintiff filed a wrongful discharge action alleging that his employer had fired him for refusing to participate in an illegal scheme to fix retail gasoline prices. In his complaint, the plaintiff pleaded both contract and tort theories of wrongful discharge. After the trial court sustained a demurrer without leave to amend as to the tort claims, the plaintiff dismissed the remaining contract claim and appealed from the resulting judgment for the defendant. Citing *Petermann, supra,* 174 Cal.App.2d 184, we reversed the judgment, holding that a wrongful discharge claim may sound in tort. We declared that "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied ' "promise[s] set forth in the [employment] contract" ' [citation], but *rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes.*" (*Tameny, supra,* 27 Cal.3d 167, 176, italics added.) *Tameny* removed any doubt about the propriety of a tortious discharge claim based on violations of fundamental public policy, but it left unanswered many questions about the new claim's scope and legal requirements.

B. *Refining the Analysis of Tortious Discharge: Gantt v. Sentry Insurance*

This court further defined the framework of the tortious discharge claim in *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*). There, the plaintiff was constructively discharged for

resisting the employer's pressures to lie during the investigation of a co-worker's sexual harassment complaint. Recognizing the public policy exception to the general "at will" rule, this court analyzed the types of claims subject to this exception: "Yet despite its broad acceptance, the principle underlying the public policy exception is more easily stated than applied. The difficulty, of course, lies in determining where and how to draw the line between claims that genuinely involve matters of public policy, and those that concern merely ordinary disputes between employer and employee. This determination depends in large part on whether the public policy alleged is sufficiently clear to provide the basis for such a potent remedy." (*Id.* at p. 1090.)

Citing *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 669-670 [254 Cal.Rptr. 211, 765 P.2d 373], this court explained that to support a tort action for wrongful discharge, "the policy in question must involve a matter that affects society at large rather than a purely personal or proprietary interest of the plaintiff or employer," and must be not only "fundamental" and "substantial," but also "well established" at the time of the discharge. (*Gantt, supra,* 1 Cal.4th 1083, 1090.) This court noted four categories of employee conduct subject to protection under a claim of wrongful discharge in violation of fundamental public policy: "(1) refusing to violate a statute [citations]; (2) performing a statutory obligation [citation]; (3) exercising a statutory right or privilege [citation]; and (4) reporting an alleged violation of a statute of public importance [citations]." (*Id.* at pp. 1090-1091, fn. omitted.)

Based upon a historical survey of tortious discharge decisions and this court's reluctance to declare public policy without legislative guidance, this court observed: "A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public." (*Gantt, supra,* 1 Cal.4th 1083, 1095; but see also *id.* at pp. 1101-1104 (conc. & dis. opn. of Kennard, J.).) In the context of a tort claim for wrongful discharge, tethering public policy to specific constitutional or statutory provisions serves not only to avoid judicial interference with the legislative domain, but also to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge: "The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes; so limited, the public policy exception presents no impediment to employers that operate within the bounds of the law." (*Id.* at p. 1095.)

In this manner, this court established a set of requirements that a policy must satisfy to support a tortious discharge claim. First, the policy

must be supported by either constitutional or statutory provisions. Second, the policy must be "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual. Third, the policy must have been articulated at the time of the discharge. Fourth, the policy must be "fundamental" and "substantial."[4]

C. *The FEHA and Tortious Discharge: Rojo v. Kliger and Jennings v. Marralle*

▮ Stevenson alleges that fundamental public policy prohibits age discrimination by employers who are subject to regulation under the FEHA. This court has previously discussed the interplay between the FEHA and common law claims, such as wrongful discharge in violation of public policy, in *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*) and *Jennings*, *supra*, 8 Cal.4th 121. Together with *Gantt*, *supra*, 1 Cal.4th 1083, these decisions provide the basis for our analysis here.

*Rojo*, *supra*, 52 Cal.3d 65, which this court decided more than one year before *Gantt*, *supra*, 1 Cal.4th 1083, was the first decision in which this court addressed a tortious discharge claim for employment discrimination prohibited by the FEHA. The plaintiffs in *Rojo* sued their former employer, asserting, among other claims, tortious constructive discharge. They alleged that they had been forced to leave their employment to escape their employer's sexual harassment. The trial court granted summary judgment for the employer, ruling that plaintiffs' action was barred because they had failed to exhaust their administrative remedies under the FEHA. ▮ Disagreeing, we concluded that the FEHA's remedies for employment discrimination are not exclusive and do not supplant common law claims, that a plaintiff need not exhaust administrative remedies under the FEHA before asserting a common law claim, and that the plaintiffs had pleaded a viable tortious discharge claim because sexual harassment in the workplace violates fundamental public policy. (*Rojo*, *supra*, 52 Cal.3d 65, 70-71.)

We began our analysis with a description of the "salient features" of the FEHA:

"The California Fair Employment Practices Act (FEPA) was enacted in 1959 (former Lab. Code, § 1410 et seq.) and recodified in 1980 in conjunction with the Rumford Fair Housing Act (former Health & Saf. Code, § 35700 et seq.) to form the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140 et

---

[4]This court has not articulated any distinction between the terms "substantial" and "fundamental" as used in this context; accordingly, we treat them as constituting a single requirement.

seq.) The law establishes that freedom from job discrimination on specified grounds, including sex [and age], is a civil right. ([Gov. Code,] § 12921.) It declares that such discrimination is against public policy ([*id.*,] § 12920) and an unlawful employment practice ([*id.*,] § 12940). (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 213 [185 Cal.Rptr. 270, 649 P.2d 912].) The statute creates two administrative bodies: the Department of Fair Employment and Housing (Department) ([Gov. Code,] § 12901), whose function is to investigate, conciliate, and seek redress of claimed discrimination ([*id.*,] § 12930), and the Fair Employment and Housing Commission (Commission) ([*id.*,] § 12903), which performs adjudicatory and rulemaking functions ([*id.*,] § 12935). An aggrieved person may file a complaint with the Department ([*id.*,] § 12960), which must promptly investigate ([*id.*,] § 12963). If the Department deems a claim valid, it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. ([*Id.*,] § 12963.7.) If that fails or seems inappropriate, the Department may issue an accusation to be heard by the Commission. ([*Id.*,] §§ 12965, subd. (a), 12969.) The Department acts as prosecutor on the accusation and argues the complainant's case before the Commission. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1383-1384 [241 Cal.Rptr. 67, 743 P.2d 1323].)

"If no accusation is issued within 150 days after the filing of a complaint, or if the Department earlier determines not to prosecute the case and the matter is not otherwise resolved, the Department must give the complainant a 'right to sue' letter. Only then may that person bring a civil suit 'under this part.' ([Gov. Code,] § 12965, subd. (b); *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1384; *Commodore Home Systems, Inc.* v. *Superior Court*, *supra*, 32 Cal.3d 211, 213-214.)

"The broad goal of the FEHA is set forth at [Government Code] section 12920, which states in pertinent part: 'It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex or age.' " (*Rojo*, *supra*, 52 Cal.3d 65, 72-73, fn. omitted.)

Concluding that the Legislature had not made the FEHA's employment discrimination remedies exclusive, we quoted an earlier decision of this court: " 'The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination . . . . ([Gov. Code,] § 12993, subd. (a).)' " (*Rojo*, *supra*, 52 Cal.3d 65,

74-75, quoting *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431 [217 Cal.Rptr. 16, 703 P.2d 354].) We agreed that the wording of the FEHA clearly reflected the Legislature's intent to "amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination." (*Rojo, supra,* 52 Cal.3d 65, 75.)

■ Holding that the plaintiffs in *Rojo* possessed a valid tortious discharge claim, we concluded that sexual harassment violates fundamental public policy. Citing *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d 654, we found that the state Constitution (Cal. Const., art. I, § 8) declared a fundamental public policy against sex discrimination in employment (*Rojo, supra,* 52 Cal.3d 65, 89-90), and that this fundamental public policy "inured" to the benefit of the public at large and was firmly established at the time of the plaintiffs' discharge (*id.* at pp. 90-91). Because the importance of the public interest that the policy against sexual harassment served seemed self-apparent, we provided no detailed support for our conclusion that the policy is fundamental: "No extensive discussion is needed to establish the fundamental public interest in a workplace free from the pernicious influence of sexism." (*Id.* at p. 90, italics omitted.)

Because the California Constitution amply established the existence of a fundamental public policy against sex discrimination in employment, we did not consider whether the same public policy was also independently established by the FEHA's prohibition against sex discrimination in employment. Thus, *Rojo, supra,* 52 Cal.3d 65, although it does define important aspects of the relationship between the FEHA and common law wrongful discharge claims, did not expressly decide whether the FEHA may itself be a source of fundamental public policy.

■ *Jennings, supra,* 8 Cal.4th 121, a post-*Gantt* decision, examined whether the FEHA's prohibition against age discrimination in employment sufficiently established a fundamental public policy against such discrimination for purposes of a wrongful discharge claim against an employer who was statutorily exempt from that same FEHA prohibition. There, an employee allegedly terminated because of her age sued her employer for wrongful discharge in violation of fundamental public policy. The employee had no statutory claim under the FEHA because her employer did not regularly employ five or more workers. (See Gov. Code, § 12926, subd. (d) [defining "employer" as a person "regularly employing five or more persons"].)

Central in *Jennings* was the scope of the fundamental public policy exception to the "at will" employment rule. Citing *Gantt, supra,* 1 Cal.4th

1083, this court affirmed that, to support a tortious wrongful discharge claim, a fundamental public policy must be grounded on either constitutional or statutory provisions. (*Jennings, supra,* 8 Cal.4th 121, 130.) To determine whether this state has a fundamental public policy against age discrimination in employment, we considered the FEHA, prior statutory references to age discrimination, and relevant case law. (*Id.* at pp. 130-135.)

We noted that the FEHA's prohibition of employment discrimination against older workers was unambiguous: "The FEHA is a statute which clearly states a public policy against discrimination on the basis of age in employment." (*Jennings, supra,* 8 Cal.4th 121, 130.) But we observed also that the Legislature had not extended this public policy to all employers: "The FEHA gives plaintiff no remedy as defendant does not regularly employ five or more persons." (*Ibid.*)

Because the FEHA could not provide the necessary articulation of public policy against age discrimination by employers having fewer than five employees, we examined other possible legislative sources of this policy. As we observed in *Jennings,* the Legislature has broadly declared a public policy against age discrimination in the workplace in Unemployment Insurance Code section 2070, which provides: "It is the public policy of the State of California that manpower should be used to its fullest extent. . . . Accordingly, use by employers . . . of arbitrary and unreasonable rules which bar or terminate employment on the grounds of age offend[s] the public policy of this State." (See *Jennings, supra,* 8 Cal.4th 121, 130-131.) We concluded, however, that Unemployment Insurance Code section 2070 could not provide a sound basis for a fundamental public policy against age discrimination by small-scale employers because it had originally been coupled with enforcement provisions that contained an exclusion for employers having fewer than six employees.[5] (*Jennings, supra,* 8 Cal.4th 121, 132.) Nor could we find any other statutory prohibition against age discrimination outside the FEHA. (*Ibid.*)

Next, we observed that exclusion of small-scale employers from the ambit of the FEHA's prohibitions serves two purposes: " 'relieving the administrative body of the burden of enforcement where few job opportunities are

---

[5]As this court explained in *Jennings,* the Legislature enacted Unemployment Insurance Code section 2070 in 1961, together with section 2071 and former section 2072 of the same code. (Stats. 1961, ch. 1623, § 1, p. 3517.) Former section 2072 made it unlawful to discharge an employee between the ages of 40 and 64 solely on the ground of age, but section 2071 limited this prohibition to employers with at least 6 employees. In 1972, the Legislature repealed section 2072 and reenacted it, with minor alterations, as former section 1420.1 of the Labor Code, while at the same time, in former section 1413 of the Labor Code, limiting this prohibition to employers with five or more employees. (Stats. 1972, ch. 1144, § 1, p. 2211.) These Labor Code provisions were in turn repealed and replaced by the current provisions of the FEHA. (See *Jennings, supra,* 8 Cal.4th 121, 131-132.)

available, *and . . .* keeping the agency out of situations in which discrimination is too subtle or too personal to make effective solutions possible.'" (*Jennings, supra,* 8 Cal.4th 121, 132-133, quoting *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 240 [5 Cal.Rptr.2d 782, 825 P.2d 767], italics added by *Jennings.*) We viewed these purposes as inconsistent with an intent by the Legislature to establish or authorize a common law cause of action, to be asserted against both large- and small-scale employers, for wrongful discharge in violation of a public policy against age discrimination.

We summarized our conclusions this way: "While the FEHA includes age among the categories protected by public policy against discrimination in employment, it does not make discrimination by an employer of less than five persons unlawful. Employers of four or fewer persons are exempt under the FEHA and no other law makes discrimination on the basis of age unlawful. It would be unreasonable to expect employers who are expressly exempted from the FEHA ban on age discrimination to nonetheless realize that they must comply with the law from which they are exempted under pain of possible tort liability. We do not ascribe such a purpose to the Legislature." (*Jennings, supra,* 8 Cal.4th 121, 135-136.)

In drawing this conclusion, we explicitly left open the question of whether fundamental public policy generally prohibits age discrimination in employment: "Whether discrimination in employment on the basis of age violates a 'fundamental' public policy has not been resolved by this court. We need not decide that question here since the 'public policy' on which plaintiff relies is not applicable to defendant. He is not an 'employer' subject to the age discrimination provisions of the FEHA." (*Jennings, supra,* 8 Cal.4th 121, 130.)

 Viewing the FEHA provisions relating to age discrimination as a whole, we must now determine whether they support a common law tort action for wrongful discharge in violation of a fundamental public policy against age discrimination by employers who are not statutorily exempt under the FEHA.

D. *Age Discrimination by Employers Subject to the FEHA*

As discussed earlier, for a policy to support a wrongful discharge claim, it must be: (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental. Three of these four requirements are not reasonably subject to dispute in this case.

First, the policy against age discrimination has been fully delineated by statute. The FEHA not only declares a general policy against age discrimination in employment, but also expressly prohibits discrimination against older workers by employers, like the Hospital, that regularly employ five or more employees.

Second, there can be little doubt that the FEHA's express policy condemning employment discrimination against older workers is one that benefits the public at large. Because average life expectancy has risen to more than 80 years, most California residents either are now or will become over-40 employees,[6] thus creating an extraordinarily broad class of potential victims of age discrimination in employment. Moreover, the pernicious effects of age discrimination in employment are not confined to the employees who are its immediate targets. As the Legislature has recognized in Unemployment Insurance Code section 2070, discrimination against older workers violates the public policy that "manpower should be used to its fullest extent," thereby depriving society at large of the benefit of valuable human resources. (See also Comment, *Expanding the Hostile Environment Theory to Cover Age Discrimination: How Far Is Too Far?* (1996) 23 Pepperdine L.Rev. 565, 570 [observing that "age discrimination is harmful to society as a whole" because it "prevents millions of productive older workers from contributing to the national economy . . . ."].) Finally, the practice of age discrimination, like other invidious forms of discrimination, "foments domestic strife and unrest" in the workplace (Gov. Code, § 12920), making for a more stressful and ultimately less productive work environment.

Third, the FEHA's policy against age discrimination in employment was well established when the Hospital discharged Stevenson. As noted earlier, the FEHA has protected older workers from employment discrimination since its enactment in 1980, and the statutory predecessors of its age discrimination provisions had previously been in effect continuously since 1961.

There remains only the question whether the FEHA's express prohibition against age discrimination in employment is substantial and fundamental. This court has not articulated a test for determining when a public policy is sufficiently substantial and fundamental to support a cause of action for tortious wrongful discharge. In this case, however, we have identified certain considerations that lead us to conclude that the FEHA's policy against age discrimination in employment is indeed fundamental.

The policy against age discrimination is similar in important ways to the policies against race and sex discrimination, policies that are unquestionably

---

[6] As we have observed, the FEHA's age discrimination prohibition applies only to employees "over the age of 40." (Gov. Code, § 12941, subd. (a).)

substantial and fundamental. Like race and sex discrimination, age discrimination violates the basic principle that each person should be judged on the basis of individual merit, rather than by reference to group stereotypes. Age, like race and sex, is the product of the workings of nature rather than the individual's free choice; once acquired, the status of being over 40 is as permanent and immutable as race or sex. Age discrimination attacks the individual's sense of self-worth in much the same fashion as race or sex discrimination. Indeed, age discrimination (or "ageism," as it is sometimes called) has been defined as " '[a] systematic stereotyping of and discrimination against people because they are old, just as racism and sexism accomplish this with skin color and gender. Old people are categorized as senile, rigid in thought and manner, old-fashioned in morality and skills.' " (Whitton, *Ageism: Paternalism and Prejudice* (1997) 46 DePaul L.Rev. 453, 456, quoting Butler, *Dispelling Ageism: The Cross-Cutting Intervention* (1989) Annals Am. Acad. Pol. & Soc. Sci., pp. 138-139, fn. 2.)

In the FEHA, the Legislature has recognized that age discrimination in employment is comparable in important ways to sex and race discrimination by declaring all three to be against public policy and by encompassing all three within the same broad prohibition. Because the FEHA's exception for employers having fewer than five workers applies not only to age discrimination but also to race and sex discrimination, the existence of this exception does not by itself prove that the policy against age discrimination is in any way less substantial and fundamental than the policies against race and sex discrimination.

As this court observed in *Jennings, supra,* 8 Cal.4th 121, 131-132, the policy against age discrimination in employment by persons having five or more employees has been the law of this state for more than thirty-five years, during which time the Legislature has reaffirmed it at least twice by reenacting the statutory provisions that embody it. From this history, it is reasonable to infer that the policy has proven to have substantial and enduring value.

Further, we observe that the FEHA's general prohibition against age discrimination in employment is a particular expression of a broader policy against age discrimination that the Legislature has articulated through a wide variety of California code provisions. Stevenson and her amici curiae list over 30 California code sections that prohibit age discrimination or implement a policy against age discrimination in specific areas such as education, health care, land use regulation, and state employment. (See, e.g., Civ. Code, § 51.2 [housing]; Gov. Code, § 11135 [state-funded programs]; *id.,* § 65008 [land use regulation]; Health & Saf. Code §§ 1317, 1317.3, 1365.5 [health

care]; Ed. Code, §§ 260, 262, 262.1, 262.2, 66030, 69535 [education]; Gov. Code, §§ 18932, 19700, 19706, 19793 [civil service]; Lab. Code, § 1777.6 [public works contracts]; Unemp. Ins. Code, § 16000 et seq. [employment training for older workers].) These laws provide further evidence that the Legislature regards the policy against age discrimination as important and that this policy is now firmly rooted in California law.

Finally, additional assurance that the policy against age discrimination in employment is substantial and fundamental may be found in the laws of other jurisdictions. Age discrimination in employment has been considered a matter of sufficient gravity to warrant legislative action by the United States Congress through the federal Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.). And, as amicus curiae American Association of Retired Persons points out, laws against age discrimination in employment have been adopted in 45 other states and the District of Columbia. (See Alaska Stat. § 18.80.220(a)(1); Ariz. Rev. Stat. Ann. § 41-1463; Colo. Rev. Stat. § 8-2-116; Conn. Gen. Stat. § 46a-60(a)(1); Del. Code Ann. tit. 19, § 711(a); D.C. Code Ann. § 1-2512; Fla. Stat. Ann. §§ 760-10, 112.043; Ga. Code Ann. §§ 34-1-2(a), 45-19-20 et seq.; Haw. Rev. Stat. § 378-2; Idaho Code § 67-5909; 775 Ill. Comp. Stat. 5/1-103(Q), 5/2-102; Ind. Code § 22-9-2-2; Iowa Code § 216.6; Kan. Stat. Ann. § 44-1113; Ky. Rev. Stat. Ann. § 344.040; La. Rev. Stat. Ann. § 23:972; Me. Rev. Stat. Ann. tit. 5, § 4572; Md. Ann. Code of 1957, art. 49B, § 16(a); Mass. Gen. Laws Ann. ch. 151B, § 4; Mich. Comp. Laws § 37.2102; Minn. Stat. § 181.81; Mo. Rev. Stat. § 213.055; Mont. Code Ann. § 49-2-303; Neb. Rev. Stat. § 48-1004; Nev. Rev. Stat. § 613.330; N.H. Rev. Stat. Ann. § 354-A:7; N.J. Stat. Ann. §§ 10:3-1, 10:5-12; N.M. Stat. Ann. § 28-1-7; N.Y. Exec. Law § 296; N.C. Gen. Stat. §§ 126-36, 143-422.2; N.D. Cent. Code § 14-02.4-03; Ohio Rev. Code Ann. § 4112.02; Okla. Stat. tit. 25, § 1302; Or. Rev. Stat. § 659.030; 43 Pa. Cons. Stat. § 955; R.I. Gen. Laws § 28-5-7; S.C. Code Ann. § 1-13-80; Tenn. Code Ann. § 4-21-401; Tex. Lab. Code Ann. § 21.051; Utah Code Ann. § 34-35-6; Vt. Stat. Ann. tit. 21, § 495(c); Va. Code Ann. § 2.1-116.06; Wash. Rev. Code § 49.44.090; W. Va. Code § 5-11-9; Wis. Stat. Ann. § 111.322; Wyo. Stat. Ann. § 27-9-105.)

For all these reasons, we are persuaded that the FEHA's policy against age discrimination in employment is sufficiently substantial and fundamental to support a tort claim for wrongful discharge. We therefore conclude that the FEHA's policy against age discrimination satisfies each of the four requirements that this court has established as essential to support a common law tort claim for wrongful discharge in violation of public policy.

We now consider certain arguments that the Hospital, those who have submitted briefs as amici curiae in support of the Hospital's position, and the

dissenting opinion have raised against the conclusion that Stevenson may sue the Hospital for wrongful termination in violation of the FEHA's policy against age discrimination in employment.[7]

The Hospital argues, first, that a common law wrongful termination claim may not be grounded on the FEHA's prohibition against age discrimination in employment because the FEHA provides a comprehensive scheme for dealing with discrimination against older workers and therefore the Legislature must have intended that this comprehensive scheme would be exclusive and would preempt common law claims. The Hospital recognizes that this court has reached a contrary conclusion regarding claims based on sex discrimination (see *Rojo, supra,* 52 Cal.3d 65, 73-82), but it argues that claims based on sex or race discrimination are distinguishable because the public policy against such discrimination had been clearly articulated in the state Constitution when the FEHA was enacted, whereas the public policy

---

[7]In his concurring opinion, Justice Baxter states that he does not agree that a public policy articulated in the FEHA may supply the public policy element of a common law wrongful discharge claim because this "view is inconsistent with our recognition in *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 79, 81-82 [276 Cal.Rptr. 130, 801 P.2d 373]) that the FEHA was not intended to create new common law remedies outside the structure of the FEHA, but does preserve all preexisting common law remedies." (Conc. opn., *post,* at p. 910.)

Justice Baxter is correct that in *Rojo* this court held that the FEHA preserves all preexisting common law remedies. But we stated that it preserved not only remedies that were "preexisting" but also those that were "alternative" (*Rojo, supra,* 52 Cal.3d 65, 80) and that under the FEHA "plaintiffs are free to seek relief for injuries arising from discrimination in employment under *any* state law, without limitation" (*id.* at p. 82, original italics). Nowhere in *Rojo* did this court state that the FEHA "was not intended to create new common law remedies." Such an observation would be beside the point, in any event, because common law remedies are established by court decision, not by statute. The common law claim for wrongful discharge in violation of public policy is no exception, having been established by the court decisions we have previously described in this opinion. One of the requirements of this cause of action is a public policy that has been articulated in a statute or a constitutional provision. (*Gantt, supra,* 1 Cal.4th 1083, 1095.) The relationship between a statute articulating public policy and a common law wrongful discharge claim is similar to the relationship, under the negligence per se doctrine (see Evid. Code, § 669), between a statute articulating a standard of care and a common law negligence claim. In both instances, the statute is used to establish the common law claim, and in both instances the purposes underlying the statute are relevant, but in neither instance can it be said that the statute "created" the common law claim or that a legislative intention to "create" a common law claim is essential or even relevant. The Legislature, of course, remains free to abrogate judicial decisions establishing common law claims or defining their elements.

Justice Baxter states that he concurs in the judgment here because a "fundamental public policy against discrimination in employment on the basis of age independent of the FEHA has existed in Unemployment Insurance Code section 2070 since 1961 . . . ." (Conc. opn., *post,* at p. 910.) It is unclear, however, what advantage Justice Baxter perceives in tracing the public policy against age discrimination to the FEHA's 1961 statutory antecedents in the Unemployment Insurance Code, since Justice Baxter does not explain how the Legislature's intent in enacting those provisions was any more or less consistent with a common law wrongful discharge claim than its intent in enacting the FEHA.

against age discrimination has been clearly articulated only in the FEHA and its statutory predecessors. According to the Hospital, the FEHA's anti-preemption provisions are most reasonably construed as applying only to common law claims that existed before FEHA's enactment and are independent of its provisions and not to common law claims, like the one at issue here, that are grounded in the FEHA itself.

The Hospital's argument fails for the reasons stated in this court's opinion in *Rojo*. We there framed one of the issues for decision as "whether the FEHA provides the exclusive remedy for injuries arising from discrimination in employment." (*Rojo, supra*, 52 Cal.3d 65, 73, fn. omitted.) Notably, we did *not* limit the issue for decision to whether the FEHA provided the exclusive remedy for employment discrimination *because of sex*, even though *Rojo* concerned a claim of sex discrimination. Rather, we addressed the exclusive remedy issue in relation to employment discrimination claims generally.

Turning for guidance to the FEHA's provisions, this court found that "[t]he meaning of the FEHA is clear in this regard." (*Rojo, supra*, 52 Cal.3d 65, 73.) We quoted Government Code section 12993, subdivision (a): " 'Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of *any other law of this state relating to discrimination* because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex, *or age*.' " (*Rojo, supra*, at p. 73; first italics added in *Rojo*, second italics added here.) We noted that the " 'law' of this state" includes the common law and that the common law provides various remedies for employment discrimination. (*Id.* at p. 74.) We concluded that "the Legislature has manifested an intent to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination." (*Id.* at p. 75.)

We next turned our attention to subdivision (c) of Government Code section 12993, providing that "it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state . . . ." We concluded that this provision indicates "a legislative intent to preempt only local law" and "provides no support for the view that the FEHA was intended to displace *state* laws relating to employment discrimination." (*Rojo, supra*, 52 Cal.3d 65, 78, italics in original.)

We did not alter these conclusions upon consideration of the general rule of statutory construction that "where a statute creates a right that did not

exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." (*Rojo, supra,* 52 Cal.3d 65, 79.) Rather, we found this general rule inapplicable because the FEHA "expressly disclaims any intent to repeal other state laws relating to discrimination, legislative or otherwise" (*ibid.*), because the right to freedom from invidious employment discrimination existed at common law, and because the FEHA "lacks the comprehensiveness necessary to infer a legislative intent to displace all preexisting *or alternative* remedies for employment discrimination" (*id.* at p. 80, italics added).

Finally, observing that the defendant in *Rojo* had relied on two lines of appellate decisions holding that the FEHA provides the exclusive remedy for injuries caused by employment discrimination, we explained why this reliance was unavailing. (*Rojo, supra,* 52 Cal.3d 65, 81-82.) We rejected the first line of authority because the courts authoring these decisions had erred by misconstruing subdivision (c) of Government section 12993 as evidencing legislative intent to preempt not only local employment discrimination laws, but also state laws. We rejected the second line of authority because the courts authoring these decisions had erroneously invoked the "new right—exclusive remedy" rule of statutory construction, which does not apply to the FEHA. Because amicus curiae California Employment Law Council has evidently misunderstood our discussion of this second line of authority, we quote that discussion in full:

"Illustrative of a second line of cases is *Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514 [194 Cal.Rptr. 520]. In *Strauss,* an age discrimination case, the employee filed a civil suit alleging a common law cause of action for wrongful discharge in violation of public policy. The Court of Appeal affirmed the judgment of dismissal following an order sustaining the defendant's demurrer. Asserting that no common law remedy for age discrimination predated the FEPA, the court concluded that the Legislature, in creating a new right, intended the statutory remedy to be exclusive. (*Id.* at p. 520.) ██ ' "Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided . . . ." [Citations.]' (*Id.* at pp. 518-519.)

██ "In determining legislative intent, however, *Strauss* and its progeny needlessly invoked the 'new right—exclusive remedy' doctrine of interpretation. *Because the FEHA, like its predecessor the FEPA, expressly disclaims any intent to displace other relevant state laws, no resort to interpretative aids is required and the existence vel non of a preexisting cause of action for the particular discrimination is irrelevant.* While the FEHA conferred certain new rights and created new remedies, its purpose was not to narrow, but to

expand the rights and remedies available to victims of discrimination. ([Gov. Code,] §§ 12993, 12920.) *Under the act, plaintiffs are free to seek relief for injuries arising from discrimination in employment under any state law, without limitation." (Rojo, supra,* 52 Cal.3d 65, 81-82, italics added, fn. omitted.) In a footnote, we declined to express any opinion concerning the *result* in *Strauss* v. *A. L. Randall Co.* (1983) 144 Cal.App.3d 514 [194 Cal.Rptr. 520] *(Strauss),* because the "age discrimination cause of action pleaded" in that case was not before us. *(Rojo, supra,* 52 Cal.3d 65, 82, fn. 10.)

Despite our clear holding that the FEHA does not preempt *any* state common law remedies for employment discrimination, *whether preexisting or not,* despite our express conclusion that the "new right—exclusive remedy" rule of statutory construction has no application to the FEHA, and despite our express disapproval of the Court of Appeal's invocation of that rule in *Strauss, supra,* 144 Cal.App.3d 514, amicus curiae California Employment Law Council has fashioned its argument in reliance on the reasoning of *Strauss* and in particular on its application of the "new right—exclusive remedy" rule of construction to a claim for wrongful discharge in violation of the public policy against age discrimination. The same argument is echoed by the Hospital and by amicus curiae The Employers Group.

The Hospital and its amici curiae supporters offer essentially two reasons for disregarding this court's carefully considered and plainly articulated conclusion in *Rojo, supra,* 52 Cal.3d 65, that the FEHA does not preclude any common law tort remedies, whether preexisting or not. First, they point to the *Rojo* footnote declining to express any opinion concerning the *result* in *Strauss, supra,* 144 Cal.App.3d 514. Because the Court of Appeal in *Strauss* declined to recognize a common law tort claim for wrongful discharge in violation of the public policy against age discrimination, the Hospital argues that our failure to disapprove that result implies doubts about the validity of a common law wrongful discharge claim grounded on the FEHA's policy against age discrimination. Second, they distinguish *Rojo* because the public policy against sex discrimination at issue there was grounded in the state Constitution, whereas the public policy against age discrimination is grounded in the FEHA itself. Neither of these proffered reasons withstands scrutiny.

As we have fully explained above, a policy may support a wrongful discharge claim only if it satisfies four requirements. The policy must be (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the

discharge; and (4) "substantial" and "fundamental." In *Rojo,* the policy that the plaintiffs relied upon in support of their common law wrongful discharge claim was the policy against sex discrimination in employment. To determine the validity of that claim, we considered, among other things, whether the policy against sex discrimination in employment was sufficiently substantial and public to support the claim. In a part of the opinion entitled *"Tortious Discharge Against Public Policy,"* this court concluded that it was. (*Rojo, supra,* 52 Cal.3d 65, 88-91.) That part of our analysis was limited to employment discrimination on the basis of sex. We did not have occasion to consider, and did not consider, whether other prohibited forms of employment discrimination, such as discrimination on the basis of age, would also support a common law wrongful discharge claim. Because different forms of employment discrimination may be prohibited for different reasons and because the policies underlying different prohibitions may vary in strength, the conclusion that a prohibition of one form of employment discrimination will support a common law wrongful discharge claim does not necessarily mean that a prohibition of a different form of employment discrimination will do likewise. In declining to express any opinion on the result in *Strauss, supra,* 144 Cal.App.3d 514, we were merely recognizing this fact. Our decision in *Rojo* makes this plain. We said that we expressed no opinion concerning the result in *Strauss* because the "age discrimination cause of action pleaded in th[at] case[] is [not] before us." (*Rojo, supra,* 52 Cal.3d 65, 82, fn. 10.)

In *Rojo,* this court devoted a separate part of the opinion, entitled *"FEHA Preclusion of Common Law Claims,"* to the question whether the FEHA preempted common law remedies for employment discrimination. (*Rojo, supra,* 52 Cal.3d 65, 73-82.) In that part of the opinion, we did not confine our discussion to claims of employment discrimination on the basis of sex. Rather, we considered the broader question of whether the FEHA preempted *any* common law tort claims for *any* employment discrimination. As noted above, we concluded that "the FEHA . . . expressly disclaims any intent to displace other relevant state laws," that "the existence vel non of a preexisting cause of action for the particular discrimination is irrelevant," and that "plaintiffs are free to seek relief for injuries arising from discrimination in employment under *any* state law, without limitation." (*Id.* at p. 82, italics in original.) Thus, our failure to expressly disapprove the result in *Strauss, supra,* 144 Cal.App.3d 514, in no way suggests that the FEHA may be interpreted as precluding or preempting an older worker's common law cause of action for wrongful discharge in violation of the public policy against age discrimination.

Equally unpersuasive is the Hospital's attempt to distinguish *Rojo, supra,* 52 Cal.3d 65, on the basis that the public policy at issue there was grounded

in the state Constitution rather than in the FEHA itself. Our conclusion that the FEHA was intended "to amplify, not abrogate, an employee's common law remedies for injuries relating to employment discrimination" (*id.* at p. 75) was based primarily on the language of Government Code section 12993, subdivision (a), stating that "[n]othing contained in this part shall be deemed to repeal . . . any other law of this state relating to discrimination because of [among other things] age." Nothing in this statutory language supports a distinction between common law claims based on policies articulated outside the FEHA and common law claims based on policies articulated within the FEHA itself. The Hospital's argument would require us to read into this clear language a qualification that the Legislature did not see fit to include. We decline to do so.

Similarly, nothing in the language of this court's *Rojo* opinion supports the proposed distinction between public policies articulated within and outside the FEHA. To the contrary, we carefully explained that it is irrelevant whether a particular common law claim preexisted the FEHA and we excluded distinctions of the kind that the Hospital here suggests by stating that under the FEHA "plaintiffs are free to seek relief for injuries arising from discrimination in employment under any state law, *without limitation*." (*Rojo, supra*, 52 Cal.3d 65, 82, new italics added, original italics omitted.)

The Hospital's remaining argument essentially is a variation on the first. The Hospital argues that even if, as we have concluded, an older worker may ground a common law wrongful termination claim in the FEHA's prohibition against age discrimination in employment, Stevenson may not rely on the FEHA to support such a claim because she did not exhaust her administrative remedies under the FEHA. As the Hospital acknowledges, this court has rejected the contention that a plaintiff must exhaust administrative remedies under the FEHA to maintain a common law tort claim of wrongful discharge in violation of public policy. (*Rojo, supra*, 52 Cal.3d 65, 88.) But the Hospital contends that this holding does not control here because it was made in the context of a claim of sex discrimination and the policy against sex discrimination is embodied in the state Constitution, whereas Stevenson relies exclusively on the FEHA as the source of the public policy against age discrimination in employment. According to the Hospital, Stevenson may not rely on the FEHA's public policy provisions to support her claim unless she establishes that the FEHA applies to her, and the Hospital asserts that the FEHA does not apply to persons who do not exhaust its administrative remedies. The Hospital attempts to draw support for this argument from this court's reasoning in *Jennings, supra*, 8 Cal.4th 121, in which we held that the plaintiff could not rely on the FEHA's articulation of a public policy against age discrimination because that policy did not apply to the plaintiff's

employer, who qualified under the statutory exemption for employers who regularly employed fewer than five workers.

This argument ignores the logic of *Jennings*, *supra*, 8 Cal.4th 121. There, this court declined to permit a common law tort action for age discrimination to be asserted against an employer with fewer than five employees because the public policy against such discrimination was effectively articulated only in the FEHA, and there it was coupled with an exemption for employers having fewer than five workers. Because of the statutory exemption, this court was unable to conclude that the Legislature intended the public policy against age discrimination in employment to apply to this group of employers. Also, employers with fewer than five workers lacked reasonable notice that their conduct could subject them to liability.

Neither of these considerations applies here. Because the Hospital has more than four workers, the Legislature clearly intended the policy against age discrimination to apply to it, and therefore recognizing a common law cause of action would not be inconsistent with an implied legislative determination regarding the proper scope of liability. In addition, the Hospital may not reasonably claim lack of notice that age discrimination would result in liability, nor is it the beneficiary of any statutory grant of immunity. As an over-40 worker, Stevenson belongs to the class of persons for whom the Legislature intended to afford a remedy for age discrimination in employment. That she failed, for whatever reason, to avail herself of those remedies does not mean either that the policy against age discrimination in employment does not apply to her or that the Hospital did not engage in conduct prohibited by the FEHA when it terminated her employment because of her age. Because the FEHA's policy against age discrimination in employment applies to both Stevenson and the Hospital, she may assert her common law wrongful termination claim without exhausting her administrative remedies under the FEHA. (*Rojo*, *supra*, 52 Cal.3d 65, 88.)

■ Stated more analytically and precisely, when a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition, but the common law claim is not subject to statutory procedural limitations affecting only the availability and scope of nonexclusive statutory remedies. ■ Under the rule as thus stated, a common law tort claim for wrongful termination in violation of the public policy against age discrimination articulated in the FEHA is subject to the FEHA's exemption for small-scale employers because that exemption is a limitation affecting the nature and scope of the age discrimination prohibition. Simply put,

employers regularly employing fewer than five persons cannot violate the FEHA's prohibition against age discrimination in employment because that prohibition does not apply to them. So too, a worker must be "over the age of 40" at the time of the alleged discrimination to rely upon the FEHA's policy against age discrimination in employment because the over-40 limitation of the FEHA (Gov. Code, § 12941, subd. (a)) is a statutory limitation affecting the nature and scope of the statutory prohibition.

By contrast, a common law tort claim for wrongful termination in violation of the public policy against age discrimination articulated in the FEHA is not subject to the FEHA's requirement that an employee exhaust administrative remedies before seeking judicial relief because that requirement does not affect the nature and scope of the prohibition but only the availability and scope of the statutory remedies. An employee's post-termination failure to exhaust administrative remedies has no bearing on whether the termination violated the public policy expressed through the statutory prohibition against age discrimination, and thus the employee's post-termination administrative default does not preclude assertion of a nonstatutory tort claim for wrongful termination in violation of public policy. .

In her dissent, Justice Brown urges this court to adopt an entirely new and additional requirement for the tort of wrongful discharge in violation of public policy—that the wrongfully discharged employee have no judicial remedy under the FEHA or under any similar statutory scheme. The dissent argues that this additional requirement is necessary to prevent employees who are the victims of prohibited employment discrimination from bypassing the administrative procedures under the FEHA (or similar statutes) because, the dissent asserts, forcing discharged employees to subject their claims to the FEHA's administrative process is essential to further the purposes of the FEHA and to maintain the proper balance between the interests of employers and employees.

As is evident from this summary of its position, the dissent's real quarrel is not with our holding in this case, but with this court's previous decision in *Rojo*, *supra*, 52 Cal.3d 65, and, even more fundamentally, with the Legislature itself.

In *Rojo*, *supra*, 52 Cal.3d 65, this court, after a careful examination of the FEHA as a whole and in particular its administrative scheme for processing employment discrimination complaints, unanimously held that the FEHA does not preempt any common law claims for employment discrimination and that a wrongfully discharged employee need not exhaust the FEHA's administrative remedies before bringing a non-FEHA wrongful discharge

action against the employer. The dissent refuses to accept, and scarcely acknowledges, these holdings of *Rojo.*

Although the dissent attempts to distinguish *Rojo, supra,* 52 Cal.3d 65, on the ground that it involved a claim of sex discrimination, not age discrimination (dis. opn., *post,* at p. 923), the logic of the dissent's argument does not permit any distinction along these lines. If parallel common law and statutory remedies for employment discrimination on account of race or sex do not undermine the legislative intent underlying the FEHA, then parallel remedies for discrimination against older workers will not do so either. Conversely, if, as the dissent repeatedly asserts, the FEHA's "carefully crafted scheme" will be "upset" if an age discrimination claimant is permitted to sue for wrongful discharge without first submitting a FEHA administrative claim (dis. opn., *post,* at p. 916),[8] then it must be equally "upset" if a race or sex discrimination claimant does not initiate the FEHA's administrative process. Thus, acceptance of the dissent's argument would require this court to overrule *Rojo, supra,* 52 Cal.3d 65, and to preclude the assertion of *any* common law tort claim for injuries arising from employment discrimination prohibited under the FEHA.

In support of its position, the dissent cites what may seem to be an impressive number of decisions from other jurisdictions. But an examination of these decisions reveals that they provide little or no assistance on the narrow issue before us in this case. In declining to recognize common law actions for violations of statutory nondiscrimination policy, many of the courts authoring these decisions relied upon the same "new right—exclusive remedy" rule of statutory construction that this court has already found to be inapplicable to the FEHA. (*Rojo, supra,* 52 Cal.3d 65, 79-81.) In other decisions, the courts restricted the scope of the tort of wrongful discharge in violation of public policy in ways that this court has previously rejected. In none of these decisions did a court find that the antidiscrimination law under consideration contained language that, like subdivision (a) of Government Code section 12993, expressly preserved for the benefit of employees all preexisting or alternative common law claims.

When we held in *Rojo, supra,* 52 Cal.3d 65, that the FEHA's employment discrimination remedies are to be in addition to, and not in lieu of, other

---

[8]The dissent is wrong in its assertion that recognizing a common law claim for wrongful discharge in violation of a public policy articulated in the FEHA "effectively forecloses any possibility of 'conference, conciliation, [or] persuasion' to resolve the dispute or rectify the discriminatory practice (§ 12931)." (Dis. opn., *post,* at p. 916.) The FEHA's administrative process and administrative remedies remain available to any employment discrimination claimant who elects to invoke them; such a claimant is not forced to choose between the common law claim and the FEHA's administrative remedies.

state law remedies for employment discrimination, we did so because we concluded that the Legislature had intended and required this result through the language of Government Code section 12993. That language dates from the FEHA's enactment in 1980, and we may presume that in enacting the FEHA the Legislature was aware of our then-recent decision in *Tameny*, *supra*, 27 Cal.3d 167, recognizing the tort of wrongful discharge in violation of public policy. (See *Jennings*, *supra*, 8 Cal.4th 121, 132, fn. 7.) Thus, we may presume that the Legislature understood that the public policies it articulated in the FEHA, including the policy prohibiting employment discrimination against older workers, could trigger claims under this newly recognized tort. Although it surely has the power to do so, the Legislature did not then, nor has it at any time since, acted to make the FEHA remedies for employment discrimination against older workers exclusive of *Tameny* claims. Ultimately, it is the Legislature that determines whether the assertion of non-FEHA claims for employment discrimination is inconsistent with or disruptive of the FEHA.

Since this court's decision in *Rojo*, *supra*, 52 Cal.3d 65, construing subdivision (a) of Government Code section 12993 as preserving all preexisting or alternative remedies for employment discrimination, the Legislature has amended that provision three times without altering the language we construed. (Stats. 1993, ch. 1277, § 15; Stats. 1992, ch. 913, § 25; Stats. 1992, ch. 912, § 8.) Under an established rule of statutory construction, the Legislature is presumed, by virtue of its action in amending a previously construed statute without changing the portion that was construed, to have accepted and ratified the prior judicial construction. (*In re Malinda S.* (1990) 51 Cal.3d 368, 380 [272 Cal.Rptr. 787, 795 P.2d 1244].) Therefore, the recent amendments of Government Code section 12993 have removed any doubt that this court correctly interpreted that provision as one that makes the FEHA's employment discrimination remedies cumulative and not, as the dissent would prefer, exclusive.

In addition to assaulting this court's decision in *Rojo*, *supra*, 52 Cal.3d 65, and the legislative judgments on which that decision was based, the dissent asserts that the state's policy against age discrimination should not support a tortious wrongful discharge claim because that policy provides no benefit to the public at large, but is merely special interest legislation for the benefit of discharged older workers. In support of its assertion that the public does not benefit when employers are prevented from discriminating against older workers, the dissent observes that discharging older workers creates job openings for younger workers, that the number of jobs is finite even in an expanding economy, and that allowing discharged older workers to sue their employers for age discrimination imposes a financial burden on businesses. (Dis. opn., *post*, at pp. 925-926.)

Here too, the dissent engages in second-guessing the Legislature, not only as to whether the policy against discrimination benefits the public generally, but also as to whether the policy against discrimination is a sound and beneficial policy for this state to adopt. On both of these points, the Legislature has clearly spoken. By declaring, in Government Code section 12920, "that the practice of denying employment opportunity and discriminating in the terms of employment" on enumerated grounds, including age, "substantially and adversely affects the interest of employees, employers, *and the public in general*" (italics added), the Legislature has made a finding of general public benefit that is consistent with, and supportive of, our similar determination in this case. And, by including age discrimination among the prohibited forms of discrimination, the Legislature has determined that whatever burdens this policy imposes on employers or younger workers is outweighed by the benefits of a labor market in which older workers are judged on their abilities, not their age.

Our decision recognizing a tortious discharge claim for older workers discharged because of age imposes no new burdens on California employers because under the FEHA the victims of such discrimination may bring civil actions for compensatory and punitive damages after obtaining a right-to-sue letter. (See *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 221 [185 Cal.Rptr. 270, 649 P.2d 912].) As compared to a statutory FEHA cause of action, a common law wrongful discharge claim does not broaden the scope of prohibited conduct, nor does it expand the array of available remedies for prohibited age discrimination; it merely provides another legal theory on which employees may pursue remedies comparable in all relevant respects to those already available to them under the FEHA. Thus, to whatever extent the threat of civil litigation and liability in damages may serve to discourage employers from firing "an older employee who no longer performs satisfactorily" (dis. opn., *post*, at p. 925), this threat exists already and is in no way amplified by our holding here. Likewise, because it does not afford any different or expanded penalties for discriminatory conduct beyond those already available under the FEHA, our decision does not upset any "careful balance the Legislature has achieved" (dis. opn., *post*, at p. 919) or create a "hostile business environment" (dis. opn., *post*, at p. 917).

At bottom, the dissent appears to question the wisdom of *any* government policy to inhibit employment discrimination against older workers. But "[o]ur function is not to judge the wisdom of statutes." (*Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1099 [282 Cal.Rptr. 841, 811 P.2d 1025].) Indeed, when this court established that only those public policies that had been articulated in a constitutional or statutory provision could

support a wrongful discharge claim, one reason this court gave was "that courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]" (*Gantt, supra,* 1 Cal.4th 1083, 1095.) Because no issue has been raised that the Legislature exceeded its constitutional powers when it enacted the FEHA, when it included discrimination against older workers among the prohibited forms of employment discrimination, when it made the FEHA's remedies for employment discrimination cumulative rather than exclusive, or when it declared that the policy against age discrimination benefits the public at large, our function here is simply to recognize and to implement, not to question, the Legislature's considered judgments.

## III. CONCLUSION

Aging is a highly complex and variable process. Chronological age alone is not a reliable measure of any individual's vitality or ability, and many individuals remain robust and productive well past the normal retirement age. Nevertheless, some employers have discriminated against highly qualified older workers solely because of their age, either by not hiring them or by replacing them with younger persons.

To remedy this injustice, the Legislature has afforded displaced older workers statutory remedies under the FEHA. In so doing, the Legislature has expressly declared that the FEHA's remedies shall be cumulative to all other state law remedies. Those remedies include common law tort claims such as a claim for wrongful discharge in violation of public policy.

We conclude that Stevenson has successfully pleaded a claim for tortious wrongful discharge grounded in the FEHA's provisions prohibiting discrimination against older workers because of their age. The policy against age discrimination in employment, as applied to over-40 workers and to employers who regularly employ more than 4 workers, is delineated by statute, benefits the public at large, and is substantial and fundamental. Furthermore, this public policy was well established at the time of Stevenson's discharge. Because the Legislature has expressly declared that the FEHA's statutory remedies are cumulative rather than exclusive, assertion of a common law tort claim for wrongful discharge in violation of the public policy against age discrimination as articulated in the FEHA is consistent with the legislative intent underlying the FEHA.

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court with directions to issue a writ of mandate commanding the superior court to vacate its order insofar as it sustains the Hospital's

demurrer to Stevenson's claim for wrongful discharge in violation of the public policy against age discrimination in employment and to enter a new order overruling the demurrer as to that claim.

George, C. J., Mosk, J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.**—I concur in the judgment of the court, but believe that the result can be supported on the narrow ground that a fundamental public policy against discrimination on the basis of age exists independent of the Fair Employment and Housing Act. Because an independent statutory expression of that policy exists the court need not address any broader question. Moreover, I do not agree with the conclusion of the majority that the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) itself may be the basis for finding a public policy that will support a common law tort action for wrongful termination in violation of public policy. That view is inconsistent with our recognition in *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 79, 81-82 [276 Cal.Rptr. 130, 801 P.2d 373] that the FEHA was not intended to create new common law remedies outside the structure of the FEHA, but does preserve all preexisting common law remedies. (Gov. Code, § 12993, subd. (a).)

A firmly established, fundamental public policy against discrimination in employment on the basis of age independent of the FEHA has existed in Unemployment Insurance Code section 2070 since 1961 (Stats. 1961, ch. 1623, § 1, p. 3517), however. As we noted in *Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 130-131 [32 Cal.Rptr.2d 275, 876 P.2d 1074], section 2070 of the Unemployment Insurance Code states: "It is the public policy of the State of California that manpower should be used to its fullest extent. This statement of policy compels the further conclusion that human beings seeking employment, or retention thereof, should be judged fairly and without resort to rigid and unsound rules that operate to disqualify significant portions of the population from gainful and useful employment. Accordingly, use by employers, employment agencies, and labor organizations of arbitrary and unreasonable rules which bar or terminate employment on the ground of age offend the public policy of this State."

This policy has been continuously recognized and enforced.[1] Former section 2072 of the of the Unemployment Code made age-based discrimina-

---

[1]As is presently the case, the Legislature excluded small employers from compliance with this policy by excluding employers of less than six persons from the definition of "employer." (Unemp. Ins. Code, § 2071.) No common law action would lie against a small employer for violation of the public policy expressed in Unemployment Insurance Code section 2070, therefore. (See *Jennings* v. *Maralle, supra,* 8 Cal.4th at pp. 135-136.)

tion an unlawful employment practice.[2] When that section was repealed in 1972, age-based discrimination was made an unlawful employment practice by former section 1420.1 of the Labor Code (Stats. 1972, ch. 1144, § 1, p. 2211), and it has now been incorporated into the FEHA in Government Code section 12941. While the statutory proscription of age-based discrimination is now subsumed in the FEHA, the Legislature did not intend thereby to supplant any existing common law remedy. The Court of Appeal, reading statements in *Jennings* v. *Marralle, supra,* 8 Cal.4th at page 132, more broadly than their context warrants, concluded that the policy expressed in Unemployment Code section 2070 may not be the basis for a common law tort action for age discrimination against any employer. That opinion addressed only age-based discrimination by small employers whom the Legislature has consistently excluded from the reach of the public policy against age discrimination, however.

Since discrimination against older workers by other employers does violate a fundamental public policy of this state which was firmly established at the time plaintiff was discharged, I agree that defendant's demurrer to plaintiff's cause of action for wrongful termination in violation of a public policy against age discrimination should have been overruled.

I therefore concur in the judgment.

**BROWN, J.**—I dissent.

Reflecting on the tradition of the common law, Llewellyn commends the "wisdom and value of moving into any new development with canny caution" and respect for the difficulties that can "grow out of letting a concept's seeming corollaries take over without reference to the sense of the situation." (Llewellyn, The Common Law Tradition, Deciding Appeals (1960) p. 281.)

---

[2]Former section 2072 of the Unemployment Insurance Code provided: "It is unlawful for an employer to refuse to hire or employ; or to discharge, dismiss, reduce, suspend, or demote any individual between the ages of 40 and 64 solely on the ground of age, except in cases where the law compels or provides for such action. This section shall not be construed to make unlawful the rejection or termination of employment where the individual applicant or employee failed to meet bona fide requirements for the job or position sought or held, or to affect bona fide retirement or pension programs; nor shall this section preclude such physical and medical examinations of applicants and employees as an employer may make or have made to determine fitness for the job or position sought or held.

"Promotions within the existing staff, hiring or promotion on the basis of experience and training, rehiring on the basis of seniority and prior service with the employer, or hiring under an established recruiting program from high schools, colleges, universities and trade schools shall not, in and of themselves, constitute a violation of this chapter.

"This section shall not limit the right of an employer, employment agency, or labor union to select or refer the better qualified person from among all applicants for a job. The burden of proving a violation of this section shall be upon the person or persons claiming that the violation occurred." (Stats. 1961, ch. 1623, § 1, p. 3518.)

This case presents an issue of first impression: whether to extend the common law tort of wrongful discharge in violation of public policy approved in *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314] (*Tameny*) to circumstances in which the public policy is articulated in a statutory scheme that provides comprehensive remedies both to redress the aggrieved employee and to vindicate the underlying policy. As Llewellyn's observations imply, any development in the common law must proceed only after considered deliberation as to its purpose and effect. (See also Mosk, *The Common Law and the Judicial Decision-making Process* (1988) 11 Harv. J.L. & Pub. Pol'y 35, 36 ["The vitality of the common law can flourish if the courts remain alert to their obligation and have the opportunity to change it when reason and equity so demand."]; cf. Civ. Code, § 3510.) For the reasons that follow, I believe neither the rationale of *Tameny* nor the public policy against employment discrimination articulated in the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.)[1] warrants enlargement of this cause of action.

FEHA is a comprehensive statute that carefully balances complementary administrative and judicial remedies not only to make whole victims of discrimination in the workplace, but also to penalize these unlawful business practices and prevent their recurrence. Permitting a parallel common law tort claim puts courts in the untenable position of using a legislative declaration of public policy as a touchstone to justify duplicative remedies that ultimately can serve only to frustrate legislative intent. In addition, recognizing a FEHA-based cause of action for wrongful discharge in violation of public policy contradicts the rationale of this exception to the at-will employment doctrine. When the Legislature has provided an adequate statutory remedy to fully protect the interests of both the employee and the public, the courts have neither reason nor need to intercede. The employee is not without redress and the public policy can be vindicated through the statute. Finally, even without adding this qualification to the *Tameny* doctrine, I would deny plaintiff relief because she has failed to establish the public policy against age discrimination "inures to the benefit of the public" or is "fundamental and substantial."

I.

A FEHA-based *Tameny* claim duplicates remedies currently available to victims of employment discrimination while defeating the goals of FEHA by circumventing legislatively designed procedures for achieving its broad public policy "to protect and safeguard the right and opportunity of all persons" to be free from discrimination in the workplace. (§ 12920.)

---

[1] Further unspecified statutory references are to the Government Code.

As this court has explained on numerous occasions, FEHA is a comprehensive statutory scheme "to provide effective remedies which will eliminate . . . discriminatory practices" in employment based on protected characteristics including age. (§ 12920.) To this end, "[t]he statute creates two administrative bodies: the Department [of Fair Employment and Housing (the Department)], whose function is to investigate, conciliate, and seek redress for claimed discrimination (§§ 12901, 12930), and the [Fair Employment and Housing] Commission [(the Commission)], which performs adjudicatory and rulemaking functions (§§ 12903, 12935). An aggrieved person may file a complaint with the Department (§ 12960), which must promptly investigate (§ 12963). If the Department deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate, the Department may issue an accusation to be heard by the Commission. (§§ 12965, subd. (a), 12969.)" (*Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 45 [276 Cal.Rptr. 114, 801 P.2d 357] (*Peralta*).) If the Department fails to act within 150 days after the filing of a complaint or earlier determines not to take administrative action, it issues a right-to-sue letter authorizing a private lawsuit. (§ 12965, subd. (b).) The right-to-sue letter is a prerequisite to judicial action. (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 83 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*).)

"[A] primary purpose of the alternative systems of redress for employment discrimination is to permit efficient and prompt administrative disposition—without cost to the victim—of claims that are amenable to conciliation or to corrective equitable remedies, and thus do not warrant a full-scale judicial proceeding with its attendant expense and delay [citation], while reserving to the judicial system, with its attendant constitutional and statutory safeguards, those statutory claims that seek significant nonquantifiable monetary recompense or that the complainant wishes to join with nonstatutory causes of action." (*Peralta, supra,* 52 Cal.3d at p. 55, fn. omitted; *Rojo, supra,* 52 Cal.3d at pp. 83-84.)

"[T]he compliance structure of the FEHA encourages cooperation in the administrative process." (*Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218 [185 Cal.Rptr. 270, 649 P.2d 912] (*Commodore*).) It also affords both the Department and the Commission an initial opportunity to utilize their respective expertise to eliminate "a particular unlawful employment practice *and* to prevent its recurrence." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1390 [241 Cal.Rptr. 67, 743 P.2d 1323], italics added (*Dyna-Med*); see *State Personnel Bd.* v. *Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 432 [217 Cal.Rptr. 16, 703 P.2d 354] (*State Personnel Bd.*).) As to the individual complainant,

the goal is to "make the aggrieved employee whole in the context of employment" (*Dyna-Med, supra*, 43 Cal.3d at p. 1387); and the Commission may order reinstatement, hiring, promotion, and backpay as well as limited compensatory damages. (§ 12970, subd. (a).) More generally, "on finding harassment [or discrimination] the Commission will order such corrective measures as will benefit both the complainant *and others*, including that the employer cease and desist the practice, report the manner of compliance, and take other remedial action as appropriate. In addition, the Commission will thereafter conduct [or direct the Department to conduct] a compliance review to see that the employer is fully obeying the order. (§ 12973.) Hence the administrative procedure serves the statutory purpose of providing effective remedies that will eliminate the discriminatory practice and prevent its recurrence, not just as to the immediate victim, but as to all employees, present and future. (§ 12920.)" (*Peralta, supra*, 52 Cal.3d at p. 53, fns. omitted; *State Personnel Bd., supra*, 39 Cal.3d at pp. 429, 432; see *Rojo, supra*, 52 Cal.3d at p. 83; cf. *Shaner* v. *Horizon Bancorp.* (1989) 116 N.J. 433, 436-438 [561 A.2d 1130, 1131-1132] (*Shaner*) [discussing similar aspects of the comprehensive remedial scheme of New Jersey's Law Against Discrimination].) In *Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074] (*Jennings*), the court recognized the significance of this remediation authority in effectuating the broader goals of FEHA: The Legislature's "aim was not so much to redress each discrete instance of individual discrimination as to eliminate the egregious and continued discriminatory practices of economically powerful organizations." (*Id.* at p. 134.)

As an alternative to the administrative process, a complainant may seek judicial relief upon the issuance of a right-to-sue letter. In that event, "[t]he same remedies, along with [unlimited] compensatory and punitive damages, may be awarded by a superior court in a private enforcement action under the FEHA . . . ." (*State Personnel Bd., supra*, 39 Cal.3d at p. 434; *Commodore, supra*, 32 Cal.3d at p. 215.) Although by statute a private right of action is contingent on the Department's decision not to prosecute, or the lapse of 150 days (§ 12965, subd. (b)), "the Director and the general counsel of the Department [have previously] advise[d the court] that right-to-sue letters are the rule, not the exception, because the Department rarely is able to complete investigations, pursue conciliation, and issue accusations within the 150-day period. For that reason, a right-to-sue letter is issued, even in advance of 150 days, to any person who states in writing that he wants to withdraw his complaint and file a civil action." (*Commodore, supra*, 32 Cal.3d at p. 218, fn. 8; see *State Personnel Bd., supra*, 39 Cal.3d at p. 433, fn. 11; *Peralta, supra*, 52 Cal.3d at p. 54; *Dyna-Med, supra*, 43 Cal.3d at pp. 1401-1402; *Carter* v. *Smith Food King* (9th Cir. 1985) 765 F.2d 916, 923;

see also Gelb & Frankfurt, *California's Fair Employment and Housing Act: A Viable State Remedy for Employment Discrimination* (1983) 34 Hastings L.J. 1055, 1066, fn. 87.)

The director has nonetheless also informed the court in the past that "if a complainant requests a right-to-sue letter in order to bring a civil suit, current Department policy is to issue the letter only after the Department has invited the respondent to make settlement offers and settlement is not achieved." (*Rojo, supra*, 52 Cal.3d at p. 84, fn. 11 [letter from the director of the Department to the Chief Justice of the Supreme Court dated June 9, 1989]; *Commodore, supra*, 32 Cal.3d at p. 218.) Such a policy is consistent with "the compliance structure of the FEHA[, which] encourages cooperation in the administrative process. . . . That helps deter strategies of 'holding out' for court damages in inappropriate cases. Further, the possibility that an action might lead to punitive damages may enhance the willingness of persons charged with violations to offer fair settlements during the conciliation process." (*Commodore, supra*, 32 Cal.3d at p. 218, fn. omitted.) Administrative procedures also allow a compliant employer to rectify discriminatory practices without costly and protracted litigation, thus benefiting all employees.

In sum, a complainant ultimately has the option to seek redress under the more streamlined, informal, and cost-effective administrative procedures or to pursue litigation. With its broad remedial and oversight authority, the Commission can fully realize the "vital policy interests embodied in FEHA, i.e., the resolution of disputes and elimination of unlawful employment practices by conciliation. [Citations.]" (*Yurick* v. *Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [257 Cal.Rptr. 665]; cf. *Shaner, supra*, 116 N.J. at p. 438 [561 A.2d at p. 1132].) At the same time, the statutory scheme recognizes that judicial relief may be appropriate under particular circumstances, as long as the Department has the opportunity to "determine[] that the claimant has satisfied all of the FEHA's requirements and is entitled to bring a civil action against the offending individual or organization." (*Carter* v. *Smith Food King, supra*, 765 F.2d at p. 923.)

The Legislature has expressly declared, "It is the existing policy of the State of California . . . that procedures be established by which allegations of prohibited harassment and discrimination may be filed, timely and efficiently investigated, and fairly adjudicated, and that agencies and employers be required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free from prohibited harassment and discrimination . . . . To further this intent, the Legislature enacts [FEHA]." (Stats. 1984, ch. 1754, § 1, pp.

6403-6404; see also Stats. 1992, ch. 911, § 1, subd. (a) ["primary public policy of [FEHA] is the prevention and elimination of unlawful employment practices"].) Thus, as with FEHA-type statutes in other states, "the remedies provided to eliminate prohibited discrimination form part of the anti-discrimination policy." (*Makovi* v. *Sherwin-Williams Co.* (1989) 316 Md. 603, 621 [561 A.2d 179, 188] (*Makovi*); *Shaner, supra,* 116 N.J. at p. 439 [561 A.2d at p. 1140] [antidiscrimination statute "encompasses . . . substantive standards and procedures that are uniquely designed to further broader constitutional and legislative goals"].) Moreover, as the rationale of *Jennings* makes clear, to fulfill FEHA's public policy courts must consider "the legislative intent reflected in [its] various provisions . . . ." (*Jennings, supra,* 8 Cal.4th at p. 124; see also *Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 486 [208 Cal.Rptr. 724, 691 P.2d 272] [wide choice of venue "important consideration" in removing barrier to filing and prosecuting FEHA actions]; *Makovi, supra,* 316 Md. at p. 623 [561 A.2d at p. 189] [judicial determination whether to recognize tort of abusive discharge based on antidiscrimination statute "does not isolate the legislative remedy from the public policy goal and does not consider the latter in a vacuum"].)

Transmuting a FEHA complaint into a *Tameny* claim upsets this carefully crafted statutory scheme by enabling the employee to seek the same judicial redress but entirely bypass the administrative review normally a prerequisite to such an action. Such bypass effectively forecloses any likelihood of "conference, conciliation, [or] persuasion" to resolve the dispute or rectify the discriminatory practice (§ 12931), compromising the Legislature's ameliorative purpose with no perceptible advantage to the employee, who simply gains a duplicative judicial remedy limited to tort damages. (See *Shaner, supra,* 116 N.J. at p. 455 [561 A.2d at p. 1141]; see also *Green* v. *Wyman-Gordon Co.* (1996) 422 Mass. 551, 558 [664 N.E.2d 808, 813]; *Clay* v. *Advanced Computer Applications* (1989) 522 Pa. 86, 92 [559 A.2d 917, 920]; *Bruffett* v. *Warner Communications, Inc.* (3d Cir. 1982) 692 F.2d 910, 919.) Determining the viability of a *Tameny* claim is not an abstract or theoretical process by which the court looks no further than a statutory reference to "public policy," thereby disassociating it from the very context that gives it substance.

Judicial interference with legislative prerogatives is particularly unwarranted where, as here, the Legislature continues to develop the statutory scheme *in response to changing needs* of employees, employers, and the public. For example, in the wake of this court's decisions in *Dyna-Med* and *Peralta*, FEHA was amended to authorize the Commission to seek "actual damages" for "emotional injury" up to $50,000 (in combination with administrative fines) and up to $150,000 for violations of Civil Code section 51.7.

(§ 12970, subd. (a)(3) & (4); see Stats. 1992, ch. 911, §§ 1, 6.) At the same time, the Legislature requires the Commission to prove "an aggrieved person has sustained actual injury" and has set forth the criteria for making that determination. (§ 12970, subd. (b).) Although the Commission may not award punitive damages (§ 12970, subd. (d)), it may assess administrative fines up to specified limits "to vindicate the purposes and policies of this part" when it finds the respondent "has been guilty of oppression, fraud, or malice"; the statute also outlines the "relevant evidence" for making such a finding. (§ 12970, subds. (c) & (d).) If the accusation prays for emotional injury damages or administrative fines, the respondent may elect to "transfer the proceedings to a court in lieu of a hearing . . . ." (§ 12965, subd. (c)(1).) As part of these amendments, the Legislature directed that the Department report "how many respondents elected to transfer the proceedings to court" and that the Commission determine "the adequacy of the amount available to compensate victims of discrimination and administrative fines" permitted under section 12970, subdivision (a)(3). (Stats. 1992, ch. 911, § 9.) By this monitoring process the Legislature can determine whether the impact of these changes comports with the decision to override *Dyna-Med* and *Peralta*.

Even this limited example highlights the necessary balance of interests the Legislature strives to maintain in executing the collective public policy undergirding FEHA: employees must be protected from discrimination and recompensed for violations of their rights; employers must rectify unlawful practices and maintain compliance without undue economic burden; the public must remain confident that antidiscrimination policies are enforced without resulting in a hostile business environment.[2] (Cf. *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680]

---

[2] As another example of the Legislature's concern for balancing the respective interests implicated in FEHA, the 1992 amendments incorporate provisions of the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) for the purpose of "strengthen-[ing] California law in areas where it is weaker than the [ADA] [including reasonable accommodation of employees with mental disabilities] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." (Stats. 1992, ch. 913, § 1.) The ADA applies only to employers with 25 or more employees, which was the initial threshold number in FEHA with respect to individuals with mental disabilities. (§ 12940, subd. (*l*)(1).) Broader application to all employers having 15 or more employees was phased in within 18 months. (§ 12940, subd. (*l*)(1); see § 12926, subd. (d)(2).)

At the same time, the Legislature enacted section 12940.3 directing various agencies to undertake "a study or survey of the costs, including litigation and reasonable accommodation expenses and other impacts on California employers of 15 or more employees, resulting from compliance with [the ADA] . . . ." The study is in part to "provide a basis for a recommendation to the Legislature and the Governor concerning whether the hardships imposed upon businesses outweigh the benefits to persons with disabilities when the requirements of [the ADA] are extended to California employers of 5 to 14 . . . employees" "by amending [FEHA] to include people with mental disabilities as a protected class." The designated

(*Gantt*) [Basing *Tameny* claims on constitutional or statutory provisions strikes "the proper balance among the interests of employers, employees and the public."].) The legislative process is uniquely suited to achieve the appropriate accommodation of competing interests. When present remedies are deemed adequate to redress employee complaints, the courts should act with particular restraint.

The United States Supreme Court's analysis in *Bush* v. *Lucas* (1983) 462 U.S. 367 [103 S.Ct. 2404, 76 L.Ed.2d 648] is instructive. In that case, the petitioner asked the court "to authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors." (*Id.* at p. 368 [103 S.Ct. at p. 2406].) Because the violation arose in an employment relationship "governed by comprehensive procedural and substantive provisions giving meaningful remedies," the high court determined "it would be inappropriate . . . to supplement that regulatory scheme with a new judicial remedy." (*Ibid.*) Acknowledging Congress had not prohibited the exercise of its remedial authority, the court also recognized it must take into account a " 'range of policy considerations' " in deciding whether to create a new remedy. (*Id.* at p. 376 [103 S.Ct. at p. 2410].) Of particular significance, the court noted the dramatic increase over the years in the protection afforded federal civil servants against termination and other retaliation for exercising their free speech and association rights. (*Id.* at pp. 381-386 [103 S.Ct. at pp. 2413-2416].) This development had culminated in substantial job protection as well as an administrative process by which aggrieved employees can challenge adverse actions by their superiors. (*Id.* at pp. 386-388 [103 S.Ct. at pp. 2415-2417].)

The court summarized the relevance of these circumstances as follows: "Given the history of the development of civil service remedies and the comprehensive nature of the remedies currently available, it is clear that the question we confront today is quite different from the typical remedial issue confronted by a common-law court. The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. . . . The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy

---

agencies are to "consider whether the additional requirements or consequences of being subject to the additional requirements will impose a significant hardship on employers of 5 to 14 . . . employees." (§ 12940.3.) If the study discloses no significant hardship, "legislation should be introduced to require that employers with between 5 and 14 employees are covered by the requirements of [the ADA]." (*Ibid.*) Pending the study, the Legislature intends "voluntary compliance" without altering existing provisions. (*Ibid.*)

for violations of employees' First Amendment rights." (*Bush* v. *Lucas, supra,* 462 U.S. at p. 388 [103 S.Ct. at pp. 2416-2417].) After identifying various advantages and disadvantages, the court concluded, "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service. Not only has Congress developed considerable familiarity with balancing governmental efficiency and the rights of employees, but it also may inform itself through factfinding procedures such as hearings that are not available to the courts." (*Id.* at p. 389 [103 S.Ct. at p. 2417].)

In my view, the court's intercession will likely upset the careful balance the Legislature has achieved after more than 35 years of fine-tuning FEHA. (Cf. *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 301-303 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*); *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 704 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063].) Like the United States Supreme Court, we should be wary of interposing a common law remedy that substantially displaces a statutory scheme forged to eliminate discrimination in the workplace— especially when the court-created claim affords little, if any, additional benefit to the victim and its presumed benefit to the public is entirely speculative.

## II.

I would deny plaintiff's *Tameny* claim for an additional reason related to the concern for its disruptive impact on FEHA.

For the first time, this court squarely confronts a case in which a common law action for wrongful discharge in violation of public policy derives solely from a comprehensive remedial statute specifically intended to vindicate the predicate public policy. On careful scrutiny, such an action is inconsistent with the rationale of *Tameny* and its seminal antecedent, *Petermann* v. *International Brotherhood of Teamsters* (1954) 174 Cal.App.2d 184 [344 P.2d 25] (*Petermann*). This conclusion finds support in the decisions of numerous sister-state jurisdictions and federal courts that have determined an additional wrongful discharge cause of action is an unwarranted exception to the at-will employment doctrine.

The reasoning of the Maryland Supreme Court in *Makovi, supra,* 316 Md. 603 [561 A.2d 179], is particularly discerning. In that case, the plaintiff brought a common law claim for abusive discharge in violation of the public policy against sex discrimination promulgated in the Maryland Fair Employment Practices Law. (See Md. Ann. Code art. 49B, §§ 14-18 (1986).) Like FEHA, the statute does not preempt other causes of action for discrimination. (*Makovi, supra,* 316 Md. at pp. 608-609 [561 A.2d at pp. 181-182].)

After recapitulating its reasons for originally granting a remedy for abusive discharge, the court concluded that the antidiscrimination statute would not sustain such relief: " ' "[This] Court was focusing on what it perceived to be a void in the law—a discharge not expressly and directly precluded by some specific statute but which nevertheless contravened some other general statement of public policy. If there were already an adequate alternative remedy in existence, the legitimate interest of the employee that the Court identified as being deserving of recognition would indeed have attained that recognition, and the newly created common law remedy would be unnecessary to assure its protection. This suggests the notion that the new cause of action was not intended to supplant existing statutory remedies, at least not those specifically crafted and effective to provide an adequate remedy for the unlawful act." ' [Citation.]" (*Id.* at pp. 611-612 [561 A.2d at p. 183].)

The *Makovi* court also considered similar development in the common law of other jurisdictions and noted, "The general theme running through the wrongful discharge 'first round' decisions of other courts is the absence of any other remedy for the employee discharged in contravention of public policy. The tort was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further. Consequently, a majority of courts faced with the issue before us has held that the tort does not lie for a discharge allegedly motivated by some discrimination which is prohibited by statute where that statute confers a remedy." (*Makovi, supra,* 316 Md. at pp. 612-613 [561 A.2d at p. 183].)

The Supreme Court of Hawaii applied the same reasoning in rejecting a *Tameny*-type claim predicated on that state's antidiscrimination law, Hawaii Revised Statutes section 378. "A *Parnar* claim [*Parnar* v. *Americana Hotels, Inc.* (1982) 65 Hawaii 370 [652 P.2d 625], Hawaii's equivalent of *Tameny*] was 'intended to apply to a "narrow class of cases" where the wrongful discharge action is seen as necessary to effectuate the public policy at stake. If, however, the statutory or regulatory provisions which evidence the public policy themselves provide a remedy for the wrongful discharge, provision of further remedy under the public policy exception are unnecessary. If the legislature has considered the effect of wrongful discharge on the policies which they are promoting, provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy.' [Citations.] [¶] . . . By making the discharge of an employee 'because of [a protected characteristic or status]' unlawful [citation], and providing a remedial scheme for that discriminatory employment practice, the legislature itself has provided the means for enforcing the public policy that [plaintiff] seeks to vindicate through his *Parnar* claim. In other words, even before *Parnar* was decided, the legislature had already done what a

*Parnar* claim is designed to do, that is, modify the employment at-will doctrine to further an important public policy." (*Ross* v. *Stouffer Hotel Co. (Hawai'i) Ltd.* (1994) 76 Hawaii 454, 464 [879 P.2d 1037, 1047].)

In reaching their conclusions, these courts and many others have understood that *Tameny*-type claims are premised on closing a gap that would otherwise leave public policy vulnerable to employers that could flout it with impunity through their hapless employees. (See Rest.2d Torts, § 874A, com. h.) "Confronted with this 'right without a remedy' scenario, courts recognized a common law action in order to fill the legislative gap. [Citation.] When a statutory remedy is available, there is no gap and the justification for judicial creativity is absent. [Citation.]" (*Crews* v. *Memorex Corp.* (D.Mass. 1984) 588 F.Supp. 27, 29.) In sum, "the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served." (*Wehr* v. *Burroughs Corp.* (E.D.Pa. 1977) 438 F.Supp. 1052, 1055; *Melley* v. *Gillette Corp.* (1985) 19 Mass.App.Ct. 511, 511-512 [475 N.E.2d 1227, 1228], affd. (1986) 397 Mass. 1004 [491 N.E.2d 252] [rejecting *Tameny*-type claim based on statutory prohibition against age discrimination]; *Shaner, supra,* 116 N.J. at pp. 453-454 [561 A.2d at pp. 1140-1141].)[3]

---

[3] Accord, *Walt* v. *State* (Alaska 1988) 751 P.2d 1345, 1353, footnote 16; *Corbin* v. *Sinclair Marketing, Inc.* (Colo.Ct.App. 1984) 684 P.2d 265, 266 ("public policy exception . . . is not available when [the] statute at issue provides to [the] employee a wrongful discharge remedy"); *Atkins* v. *Bridgeport Hydraulic Co.* (1985) 5 Conn.App. 643, 648 [501 A.2d 1223, 1226] (declining to permit *Tameny*-type claim based on employment discrimination statute); *Nolting* v. *National Capital Group, Inc.* (D.C. 1993) 621 A.2d 1387, 1389; *Ross* v. *Stouffer Hotel Co. (Hawai'i) Ltd., supra,* 76 Hawaii at page 464 [879 P.2d at page 1047]; *Mein* v. *Masonite Corp.* (1984) 124 Ill.App.3d 617, 619 [80 Ill.Dec. 154, 464 N.E.2d 1137, 1139], affirmed (1985) 109 Ill.2d 1 [92 Ill.Dec. 501, 485 N.E.2d 312] (rejecting *Tameny*-type claim based on statutory prohibition against age discrimination; law "contains a comprehensive series of remedies for violations of the policy therein stated"); *Grzyb* v. *Evans* (Ky. 1985) 700 S.W.2d 399, 401 (rejecting *Tameny*-type claim based on employment discrimination statute: "Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute. [Citations.]"); *Makovi, supra,* 316 Md. at page 626 [561 A.2d at page 190]; *Dudewicz* v. *Norris-Schmid, Inc.* (1993) 443 Mich. 68, 79 [503 N.W.2d 645, 650]; *Sands Regent* v. *Valgardson* (1989) 105 Nev. 436, 440 [777 P.2d 898, 900] ("Legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *Howard* v. *Dorr Woolen Co.* (1980) 120 N.H. 295, 297 [414 A.2d 1273, 1274] (rejecting *Tameny*-type claim based on statutory prohibition against age discrimination); *Provens* v. *Stark Cty. Bd. of Mental Ret.* (1992) 64 Ohio.St.3d 252, 255-261 [594 N.E.2d 959, 961-965] (same; no need for courts to "fill the void"); *List* v. *Anchor Paint Mfg. Co.* (Okla. 1996) 910 P.2d 1011, 1015 (no common law action for violation of statutory prohibition against age discrimination); *Walsh* v. *Consolidated Freightways, Inc.* (1977) 278 Or. 347, 352 [563 P.2d 1205, 1208-1209]; *Cross* v. *Eastlund* (1990) 103 Or.App. 138 [796 P.2d 1214] (declining to permit *Tameny*-type claim

Limiting common law claims for wrongful discharge in violation of public policy to cases in which the Legislature has not afforded comprehensive statutory relief fully comports with the reasoning in *Tameny* and *Petermann*. In both cases, the employee faced the Hobson's choice of termination or "continued employment . . . contingent upon his commission of a felonious [or other illegal] act at the instance of his employer . . . ." (*Petermann, supra,* 174 Cal.App.2d at p. 189; *Tameny, supra,* 27 Cal.3d at p. 174.) The *Petermann* court acknowledged that "[t]he threat of criminal prosecution would, in many cases, be a sufficient deterrent [to suborning or committing perjury] upon both the employer and employee . . . . However, in order to more fully effectuate the state's declared policy against perjury, the civil law, too, must deny the employer his generally unlimited right to discharge an [at-will] employee . . . when the reason for the dismissal is the employee's refusal to commit perjury." (*Petermann, supra,* 174 Cal.App.2d at p. 189.)

When an employer jeopardizes a fundamental public policy such as the administration of justice, the right to discharge may be limited both "by statute" and "by considerations of public policy." (*Petermann, supra,* 174 Cal.App.2d at p. 188; *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 668 [254 Cal.Rptr. 211, 765 P.2d 373] (*Foley*); *Tameny, supra,* 27 Cal.3d at p. 172.) In *Petermann* and *Tameny,* no statute protected the employee and the public from the employer's attempts to contravene the public welfare; therefore, the courts perforce had to invoke policy considerations. (*Tameny, supra,* 27 Cal.3d at p. 177; see also *Gantt, supra,* 1 Cal.4th at p. 1090; *Foley, supra,* 47 Cal.3d at p. 670.) The implicit corollary to this rationale is that an existing remedy adequate to the task of defending the interests at stake obviates the need for any further protection. (Cf. *Moradi-Shalal, supra,* 46 Cal.3d at p. 304.) This deference to legislative priorities also underscores the

based on employment discrimination statute); *Clay* v. *Advanced Computer Applications, supra,* 522 Pa. at pages 90-95 [559 A.2d at pp. 919-921] (same); *Epps* v. *Clarendon County* (1991) 304 S.C. 424, 426 [405 S.E.2d 386, 387]; *Bourque* v. *Wausau Hosp. Center* (1988) 145 Wis.2d 589, 597-599 [427 N.W.2d 433, 436-437] (rejecting *Tameny*-type claim based on employment discrimination statute); *Allen* v. *Safeway Stores Inc.* (Wyo. 1985) 699 P.2d 277, 284 (same); *Smith* v. *F.W. Morse & Co., Inc.* (1st Cir. 1996) 76 F.3d 413, 428-429 (applying Maine law in declining to permit *Tameny*-type claim based on employment discrimination statute); *Polson* v. *Davis* (10th Cir. 1990) 895 F.2d 705, 709-710 (same, applying Kansas law); *Fellows* v. *Earth Const., Inc.* (D.Vt. 1992) 794 F.Supp. 531, 538, vacated on other grounds 805 F.Supp. 223 (same, applying Vermont law); *Prewitt* v. *Factory Motor Parts, Inc.* (W.D.Mo. 1990) 747 F.Supp. 560, 565-566 (applying Missouri law); *Steinbach* v. *Northwestern Nat. Life Ins. Co.* (D.Minn. 1989) 728 F.Supp. 1389, 1294 (applying Minnesota law in declining to permit *Tameny*-type claim for violation of statutory prohibition against age discrimination); see also federal cases cited in *Makovi, supra,* 316 Md. at page 617 [561 A.2d at page 186].

reasoning of *Gantt*, which makes a constitutional or statutory provision the requisite source of public policy. (*Gantt*, *supra*, 1 Cal.4th at p. 1095.)

As previously noted, "FEHA establishes a comprehensive scheme for combating employment discrimination. [Citations.] As a matter of public policy, the FEHA recognizes the need to protect and safeguard the right and opportunity of all persons to seek and hold employment free from discrimination. [Citation.]" (*Brown* v. *Superior Court*, *supra*, 37 Cal.3d at p. 485.) To that end, it provides for a broad array of administrative and judicial remedies intended and adequate to vindicate the policies it reflects; indeed, the remedies are integral to accomplishing its goals. (Stats. 1984, ch. 1754, § 1, p. 6403.) There is no void for this court to fill, no legislative gap. As the *Petermann* court would see it, the public policy of this state would *not* "be seriously impaired" if employees were denied a FEHA-based *Tameny* claim. (*Petermann*, *supra*, 174 Cal.App.2d at p. 189; cf. *Jennings*, *supra*, 8 Cal.4th at p. 136.)

Applying such a limitation to these claims does not raise a question of FEHA preemption or exclusivity. The court's task is to define the parameters of a common law tort action for wrongful discharge in violation of public policy, not to interpret FEHA *qua* a statutory scheme "to provide effective remedies which will eliminate . . . discriminatory practices [in employment]." (§ 12920; cf. *Rojo*, *supra*, 52 Cal.3d 65.) The proper focus is thus the evolving contours of the common law, not the scope of the predicate legislation. Just as this court has in past decisions tethered *Tameny* claims to fundamental and well-established public policies grounded in a statute or the Constitution and intended to inure to the benefit of the public, it should now further refine its criteria to require that there be no competing comprehensive remedial scheme already protecting the interests of the aggrieved employee and society. This is a question of judicial restraint not statutory construction.

This restriction also does not contravene the construction of FEHA articulated in *Rojo*, *supra*, 52 Cal.3d 65. There, the court held that exhaustion of administrative remedies was a prerequisite only to litigation under the statute, which "does not displace any causes of action and remedies that are otherwise available to plaintiffs." (*Id.* at p. 82, fn. omitted.) In addition to their FEHA claims, the plaintiffs in *Rojo* asserted their employer had violated the constitutional prohibition against sex discrimination; because this cause of action was independent of FEHA, the court allowed them to proceed under *Tameny* without exhausting administrative remedies. (*Id.* at pp. 89-91.) In the present circumstance, however, the question is not one of displacement but of duplication. The Legislature may not have precluded

FEHA-based *Tameny* claims but that is a different inquiry from whether this court should afford a common law remedy on the same basis. Plaintiff's *Tameny* claim is not "outside the ambit of statutory protection" (*id.* at p. 81); it is wholly derivative of and dependent on FEHA as its source of public policy. (See *Jennings, supra*, 8 Cal.4th at p. 125 ["no other statute or constitutional provision bars age discrimination"]; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 490 [156 Cal.Rptr. 14, 595 P.2d 592] [FEHA's antecedent FEPA (Fair Employment Practices Act) "in no sense declaratory of preexisting common law doctrine"].) As we explained in *Jennings*, section 12920 "reflects an intent to create new rights within the FEHA statutory scheme while leaving existing rights intact, not intent to create new common law rights." (*Jennings, supra*, 8 Cal.4th at p. 135.) *Rojo* notwithstanding, a FEHA-based *Tameny* claim can be no more expansive than its predicate.

This proposed limitation is quite narrow and would apply only when, as here, adequate statutory remedies are available. When necessary to fill legislative gaps and to effectuate public policy, *Tameny* claims would still be available consistent with their rationale. The intensity of the majority's animosity toward such a modest proposal is indeed curious for by definition there is nothing inexorable about the development of the common law. The court created the tort of wrongful discharge in violation of public policy; the court has in the past demarcated its scope; the court may further delimit its application as "reason and equity so demand." (Mosk, *The Common Law and the Judicial Decision-making Process, supra*, 11 Harv. J.L. & Pub. Pol'y at p. 36.) In expanding the public policy exception to cases in which the statutory predicate incorporates a comprehensive remedial scheme, the majority cite no unmet need, articulate no injustice lacking redress. Rather, they ironically seek to justify an expansion of court-made law by claiming—to paraphrase Flip Wilson—"the [Legislature] made [us] do it." The Legislature's failure to make FEHA exclusive does not compel this court to create duplicative remedies. This is not an issue of legislative intent or acquiescence, but of common law evolution consistent with statutory policy.

A clear majority of courts faced with precisely the same opportunity for expansion of the common law have prudently declined the temptation and have refused to recognize *Tameny*-type claims when "the same statute that enunciates the public policy . . . also provides the structure for pursuing a claim for [wrongful discharge] in contravention of its terms." (*Grzyb* v. *Evans, supra*, 700 S.W.2d at p. 401; see *ante*, fn. 3.) Although refusal is sometimes based on legislative intent, courts have also consistently recognized that the rationale of the public policy exception does not extend to such cases because there simply is no inequity for the common law to

mitigate.[4] Significantly, many of these decisions arose in the context of statutory schemes prohibiting employment discrimination, and several specifically concerned claims of age discrimination.[5] These cases articulate a principled framework for determining when to invoke a common law exception to the at-will employment doctrine; their persuasiveness lies not in their numbers but in the force of their logic.

## III.

Even without rejecting her *Tameny* claim because the statutory remedy adequately protects and vindicates the public policy at issue, I find plaintiff has failed to meet at least two of its criteria: that the public policy against age discrimination articulated in FEHA "inures to the benefit of the public at large" and that it is "fundamental." (*Foley, supra,* 47 Cal.3d at p. 669.)

With respect to the "public benefit," the majority conclude "there can be little doubt" this element is satisfied in part because "most California residents either are now or will become over-40 employees, thus creating an extraordinarily broad class of potential victims of age discrimination in employment." (Maj. opn., *ante,* at p. 895, fn. omitted.) Granted. But "public" policy adequate to support a *Tameny* claim is not a matter of demographics; even a majority of the populace could not, simply by virtue of their numbers, establish the requisite societal benefit.

Nor does invoking FEHA's general policy statement suffice. (§ 12920.) As previously discussed, the statutory scheme implicates a broader array of

[4]See, e.g., *Corbin* v. *Sinclair Marketing, Inc., supra,* 684 P.2d at page 267; *Atkins* v. *Bridgeport Hydraulic Co., supra,* 5 Conn.App. at page 648 [501 A.2d at p. 1226]; *Ross* v. *Stouffer Hotel Co. (Hawai'i) Ltd., supra,* 76 Hawaii at page 464 [879 P.2d at p. 1047]; *Makovi, supra,* 316 Md. at pages 612-621 [561 A.2d at pages 183-188]; *Shaner, supra,* 116 N.J. at pages 453-454 [561 A.2d at pp. 1140-1141]; *Provens* v. *Stark Cty. Bd. of Mental Ret., supra,* 594 N.E.2d at pages 961-962; *List* v. *Anchor Paint Mfg. Co., supra,* 910 P.2d 1011, 1013-1014; *Walsh* v. *Consolidated Freightways, Inc., supra,* 278 Or. at pages 351-352 [563 P.2d at pp. 1208-1209]; *Allen* v. *Safeway Stores Inc., supra,* 699 P.2d at page 284; *Bush* v. *Lucas, supra,* 462 U.S. at page 388 [103 S.Ct at pp. 2416-2417]; *Bruffett* v. *Warner Communication, Inc., supra,* 692 F.2d at page 919 (applying Pennsylvania law); *Prewitt* v. *Factory Motor Parts, Inc., supra,* 747 F.Supp. at pages 565-566; *Crews* v. *Memorex Corp., supra,* 588 F.Supp. at page 29.

[5]See *Mein* v. *Masonite Corp., supra,* 124 Ill.App.3d 617, 619 [80 Ill.Dec. 154, 464 N.E.2d 1137, 1139] (statute provided "comprehensive series of remedies" as well as limited judicial review); *Melley* v. *Gillette Corp., supra,* 19 Mass.App.Ct. 511 [475 N.E.2d 1227]; *Sands Regent* v. *Valgardson, supra,* 105 Nev. 436 [777 P.2d 898]; *Howard* v. *Dorr Woolen Co., supra,* 120 N.H. 295 [414 A.2d 1273]; *Shaner, supra,* 116 N.J. 433 [561 A.2d 1130]; *List* v. *Anchor Paint Mfg. Co., supra,* 910 P.2d 1011; *Steinbach* v. *Northwestern Nat. Life Ins. Co., supra,* 728 F.Supp. 1389 (applying Minnesota law); cf. *Bennett* v. *Hardy* (1990) 113 Wn.2d 912 [784 P.2d 1258] (*Tameny*-type action allowed for claim of age discrimination because statute provided right but no remedy).

policy considerations. Retaining an older employee who no longer performs satisfactorily for fear of costly litigation can be as disruptive to the work environment as a discriminatory discharge. In its own respect, the hiring and advancement of younger workers serves the public interest as fully as the retention of older, more experienced workers. More to the point, even in an expanding economy the number of positions available in the workplace remains finite. Thus, although retaining older workers and promoting younger ones are not mutually exclusive goals, the inherent competition of the job market creates an inevitable tension. Perfect accommodation will undoubtedly remain elusive; however, FEHA is a reasonable effort to protect both the individual's interest in discrimination-free employment and the broader public interest in vindicating that policy while maintaining a healthy business climate in California. The statutory scheme also reflects a legislative preference in achieving these policies for initiating the process of redress with conciliation and mediation rather than hit-and-miss litigation.

In gauging whether a particular policy is "public" in this context, our discussion in *Foley* offers considerable guidance. The plaintiff alleged he was wrongfully terminated because he reported to his employer that his immediate supervisor was suspected of embezzlement at another job. (See Lab. Code, § 1102.5.) The court rejected his *Tameny* claim because "the duty of an employee to disclose information to his employer serves only the [latter's] private interest." (*Foley, supra,* 47 Cal.3d at p. 671.) "The absence of a distinctly 'public' interest in this case is apparent when we consider that if an employer and employee were *expressly* to agree that the employee has no obligation to, and should not, inform the employer of any adverse information the employee learns about a fellow employee's background, nothing in the state's public policy would render such an agreement void. By contrast, in the previous cases asserting a discharge in violation of public policy [, e.g., *Tameny* and *Petermann*], the public interest at stake was invariably one which could not properly be circumvented by agreement of the parties." (*Id.* at p. 670, fn. 12; see also *Gantt, supra,* 1 Cal.4th at p. 1090.)

An agreement requiring the employee to retire at some designated age over 40 would not contravene any societal interest; thus, the policy against age discrimination does not meet this element of a *Tameny* claim. (Cf. *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410 [205 Cal.Rptr. 576] [upholding constitutionality of aged-based benefit reduction provisions of Judges' Retirement Law]; *Vance* v. *Bradley* (1979) 440 U.S. 93 [99 S.Ct. 939, 59 L.Ed.2d 171] [upholding constitutionality of compulsory retirement of foreign service officers at age 60]; *Massachusetts Bd. of Retirement* v. *Murgia* (1976) 427 U.S. 307 [96 S.Ct. 2562, 49 L.Ed.2d 520] [upholding constitutionality of compulsory retirement of police officers at age 50].) Such an

agreement would in effect be the equivalent of an employment contract for a specified term calculated according to the employee's age.

The fact the Legislature has recognized the "opportunity to seek, obtain and hold employment *without discrimination because of*" age as a "civil right" (§ 12921) further suggests the employee's policy interest in FEHA is substantially personal. As a general rule, civil rights are those guaranteed to the *individual* by constitution or statute. (See Black's Law Dict. (4th ed. 1968) p. 1487, col. 2; Webster's New World Dict. (3d college ed. 1988) p. 257.) The public's interest incorporates, but also transcends, the employee's because it extends to an overarching concern for a vigorous state economy as well.

I also disagree with the majority's conclusion the policy against age discrimination is fundamental in the sense required to establish a *Tameny* claim. (See *Sands Regent* v. *Valgardson, supra,* 105 Nev. at pp. 439-440 [777 P.2d at p. 900].) Because they "have identified certain considerations" presumably relevant to the analysis (maj. opn., *ante,* at p. 895), the majority find this element satisfied notwithstanding their acknowledged failure to articulate a test for making the determination. Discrimination based on age is *not,* however, like race and sex discrimination. It does not mark its victim with a "stigma of inferiority and second class citizenship" (*Sail' er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 19 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]); it is the unavoidable consequence of that universal leveler: time. (See Schuck, *The Graying of Civil Rights Law: The Age Discrimination Act of 1975* (1980) 89 Yale L.J. 27, 33-34 (Schuck).)

The United States Supreme Court pointedly drew the distinction in *Massachusetts Bd. of Retirement* v. *Murgia, supra,* 427 U.S. 307, a case challenging the constitutionality of a Massachusetts statute mandating retirement of police officers at age 50. "While the treatment of the aged in this Nation has not been wholly free of discrimination, such persons, unlike, say, those who have been discriminated against on the basis of race or national origin, have not experienced a 'history of purposeful unequal treatment' or been subjected to unique disabilities on the basis of stereotyped characteristics not truly indicative of their abilities." (427 U.S. at p. 313 [96 S.Ct. at p. 2567]; *Schmidt* v. *Superior Court* (1989) 48 Cal.3d 370, 389 [256 Cal.Rptr. 750, 769 P.2d 932] [declining to apply strict scrutiny to aged-based classifications]; see also *Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 37-38 [219 Cal.Rptr. 133, 707 P.2d 195].) The aging process is by definition irreversible; but age is not an "immutable" characteristic comparable to race and sex, i.e.; "a status into which the class members are locked by the accident of birth." (*Sail' er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d at p. 18.) "While the age of each

of us at any particular time is the certain result of the date of our birth, the progression through the stages of life is simply a natural process to which every one of us is subject. As a result, no member of an age group labors under any disability not encountered by every other member of society at some point in time. In that regard, age cannot be equated with race . . . or sex." (*Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 551 [173 Cal.Rptr. 539].)

FEHA itself reflects a recognition that some age-based distinctions are acceptable. (See §§ 12941, 12942; see also §§ 75075-75079; cf. Civ. Code, §§ 51.2, 51.3 [authorizing age discrimination in housing "to meet the physical and social needs of senior citizens"].) Furthermore, the legislative response to age discrimination in employment and elsewhere has resulted primarily from changing demographics. (See Schuck, *supra*, 89 Yale L.J. at pp. 40-41.) The California Constitution prohibited sex discrimination as early as 1879 (Cal. Const., art. XX, former § 18); race and several other characteristics were added in 1974 (Cal. Const., art. I, § 8), but age remains conspicuously absent from the list. On the other hand, a substantial number of the statutes cited by the majority protecting against age discrimination (maj. opn., *ante*, at pp. 896-897) were enacted much more recently.[6] Technological changes in the workplace rather than fundamental social policies have also influenced some of this legislation. In enacting the Training and Employment Programs for Older Californians Act of 1983 (Unemp. Ins. Code, § 16000 et seq.), the Legislature specifically noted that the decline in civilian labor force participation of persons aged 55 to 64 was in part attributable to "[n]ew technologies, which have made individuals' job skills obsolete." (*Id.*, § 16001.) Thus, unlike race and sex, the various prohibitions against age discrimination arise not from any fundamental character, but from the realization more and more of the population needs such protection.[7] In reality, as baby boomers grow older, our society is becoming as solicitous of age as we once were fascinated by youth and beauty.

## IV.

To deny plaintiff a FEHA-based *Tameny* claim is not to condone or countenance discrimination in employment because of age or on any other

---

[6]See, e.g., Civil Code section 51.2 (1984); Education Code sections 260 (1982), 262 (1982), 262.1 (1988), 262.2 (1988), 66030 (1991), 69535 (1976); Government Code sections 19793 (1977); Health and Safety Code sections 1317.3 (1987), 1365.5 (1990); Unemployment Insurance Code section 16000 et seq. (1983).

[7]In support of their conclusion that plaintiff has identified a fundamental public policy, the majority also cite statutes similar to FEHA in numerous other jurisdictions. (Maj. opn., *ante*, at p. 897.) As noted, at least seven courts have rejected *Tameny*-type claims predicated on statutory prohibitions against age discrimination in employment. (*Ante*, at p. 925, fn. 5.)

invidious basis. On the contrary, it recognizes that the Legislature has vigorously defended the public policy underlying FEHA and provided comprehensive remedies to redress and rectify violations. The only question before us is whether any other considerations justify the court in displacing these legislative efforts.

The peripatetic development of the common law tort action for wrongful discharge in violation of public policy has until now proceeded with a measure of judicial caution. (See *Jennings, supra,* 8 Cal.4th 121; *Gantt, supra,* 1 Cal.4th 1083; see also *Foley, supra,* 47 Cal.3d 654.) This restraint has reflected both an appreciation for protecting employees and the public interest and an understanding that "[t]he expansion of tort remedies in the employment context has potentially enormous consequences for the stability of the business community." (*Foley, supra,* 47 Cal.3d at p. 699; see *Gantt, supra,* 1 Cal.4th at p. 1095.) The majority's holding departs dramatically from this circumspect path, and substantially untethers *Tameny* claims from their rationale. Before taking such a step, I would heed the words of William Penn: "Have a care therefore where there is more sail than ballast."[8]

I would affirm the judgment of the Court of Appeal.

---

[8]*Some Fruits of Solitude.*