Filed 5/22/23  Ponciano v. Citrus Community College District CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RONALD L. PONCIANO, | B316978 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19PSCV00139) |
| v. | |
| CITRUS COMMUNITY COLLEGE DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Mahoney & Soll and Paul M. Mahoney for Plaintiff and Appellant.

Walsh & Associates, Dennis J. Walsh and Arash Arjang for Defendants and Respondents.

—————————————

In this age discrimination action, plaintiff Ronald L. Ponciano appeals from a judgment following orders granting demurrers and judgment on the pleadings in favor of employer Citrus Community College District (District), and District employees Geraldine Perri and Robert Sammis. Ponciano contends: (1) he was not required to exhaust administrative remedies under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) to pursue common law remedies for employment discrimination; (2) equitable principles excused his failure to obtain a right-to-sue letter from the Department of Fair Employment and Housing (DFEH);[1] (3) if a right-to-sue letter were required, leave to amend should be granted; and (4) demurrers should not have been sustained to his causes of action for intentional and negligent infliction of emotional distress.

We conclude that Ponciano has not identified any common law cause of action to remedy discrimination or harassment that he alleged in the complaint. His failure to exhaust administrative remedies was not excused by his government claim notice or any other circumstance. The facts alleged do not state a claim for intentional or negligent infliction of emotional distress, and Ponciano has not met his burden on appeal to explain how he could amend the complaint to state a cause of action. Therefore, we affirm.

---

[1] Effective June 30, 2022, after the events in this case, the agency's name changed to the Civil Rights Department. (Gov. Code, § 12901.)

# FACTS[2]

Ponciano was 59 years old when he filed the operative complaint in this case. He was hired by the District in 2005 and has worked as the head coach of the football team for 12 years. Perri and Sammis are also employed by the District.

The District denied several of Ponciano's requests on behalf of the football program. Ponciano requested the use of air conditioning for the men's football locker room on several occasions. He notified his superiors on several occasions that the field turf was in poor condition and likely to cause non-contact injuries to his players. He requested practices be held at night, something commonly done at other schools, so that the team did not have to practice in extreme heat. The field turf was replaced, but his requests for air conditioning, night practice, and scheduling changes were repeatedly denied, jeopardizing the safety of his players.

The football program was not provided equal treatment and benefits compared to other sports programs at the District as follows: (1) the participation numbers and the amount of money provided to each athlete were misrepresented in an official report; (2) food comparisons and per diem were lower than other sports programs; (3) football did not receive new uniforms for

---

[2] In accordance with the standard of review on appeal from an order sustaining a demurrer or granting judgment on the pleadings, we deem all properly pleaded, material facts to be true, but do not assume the truth of contentions, deductions, or conclusions of law. (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439–440 (*Stearn*); *Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670 (*Adams*).)

12 seasons, while other sports received new uniforms annually; (4) assistant coaches in other sports were allowed to teach extra classes for extra pay; (5) the pay increase for the head football coach was not equal to the pay increases for head coaches of other sports, even though Ponciano had more experience and education than any other coach in the District; (6) other teams got "[s]pirit [p]acks" with gear, such as back packs, uniforms, and socks, which the football program did not get; (7) other sports received money from the rental of their field, court, or pool, but not the football program; (8) there were signs around campus for other student athlete sports, but not football; and (9) some sports received four times the amount of funding per student athlete compared to football.

Ponciano learned that he was underpaid by the District for years. Moreover, other coaches in the department, some of whom were younger and less qualified, received higher compensation than Ponciano. The actions that reduced Ponciano's pay included: not counting units that would enhance his pay, not counting years of experience which would enhance his pay, changing Ponciano's job title to diminish his earnings, failing to promote him because of the change in job title, and allowing threats, intimidation, retribution, retaliation, and nepotism, all of which caused Ponciano physical and emotional distress. Ponciano was constantly questioned about how long he planned to coach, with the implication that he should quit due to his age. The defendants were afraid to fire him because he had worked for the District for so long.

The defendants spread rumors that Ponciano was going to be fired for bringing the safety issues and compensation issues to light. They also published false statements alleging that

4

Ponciano conducted his practices in a negligent fashion and caused his players to suffer from heat stroke. A trainer employed by the District told several people at a high school football game being played at the District, "Ron Ponciano is getting fired." As a result, many people and players contacted Ponciano to ask if he was getting fired. These statements interfered with recruiting.

Ponciano contacted the Title IX coordinator at the District about the rumor that he would be fired, as well as harassment and discrimination that he was experiencing by the coordinator's superior, Sammis, but the coordinator did not contact him to provide assistance. Ponciano's complaints to Perri and Sammis about Title IX and Education Code violations were ignored.

An athletic secretary began to not clear athletes playing football who were coached by Ponciano, although she had told Ponciano that the players were cleared. The reimbursement rules for classes discriminated against athletes, so Ponciano lost several students from his program. A broken copy machine that Ponciano needed to coach was not fixed for the entire season. A mid-season practice field was taken away from Ponciano's program without warning before a conference championship game. Ponciano was forced to stripe the entire softball field for his team to practice. Women's soccer received $8 per meal per athlete and men's soccer received $10 to $15 per meal per athlete, but football received $2.30 per meal per athlete. In addition, the website Transparent California reported a higher salary for him than his W-2 showed for the same year.

# PROCEDURAL BACKGROUND

## Complaint Filed

On February 7, 2019, Ponciano filed a complaint against the District, Perri, and Sammis for age discrimination, hostile work environment, and negligent and intentional infliction of emotional distress. He filed an amended complaint, and the defendants filed a demurrer. On August 7, 2019, the trial court overruled the demurrer as to age discrimination, but sustained it as to the remaining causes of action with leave to amend.

On September 11, 2019, Ponciano filed a second amended complaint alleging the same four causes of action. Defendants filed a demurrer to the causes of action other than age discrimination. On March 11, 2020, the trial court sustained the demurrer with leave to amend.

## Operative Third Amended Complaint

On April 6, 2020, Ponciano filed the operative third amended complaint for age discrimination, hostile work environment, and negligent and intentional infliction of emotional distress. In addition to the facts above, the cause of action for age discrimination alleged that Ponciano's pay had been decreased due to age discrimination and a hostile work environment. Less qualified employees had been paid more money and treated more fairly.

The cause of action for hostile work environment additionally alleged that due to Ponciano's age and in order to make Ponciano's environment intolerable and force him to resign,

6

the defendants denied Ponciano's requests on behalf of the football team and provided unequal treatment to the football program compared to other sports programs in violation of Title IX. The discriminatory actions that caused Ponciano to be underpaid were motivated by a desire to force him to resign because of his age.

The rumor spread by the District, through Sammis and Perri, that Ponciano would be fired, the statement that he conducted his practices negligently, and the trainer's comment that he would be fired were motivated by age discrimination and the desire to create a hostile work environment to force Ponciano to quit. They retaliated against him due to his complaints and his age. All of the statements and actions were ratified by Perri and Sammis. The defendants were liable under Government Code sections 815.2, subdivision (a), and 820, subdivision (a). By ignoring Ponciano's complaints about Title IX and Education Code violations, the defendants engaged in a course of conduct to force Ponciano to resign.

Discriminatory reimbursement rules for classes, failing to fix the copy machine, removing a practice field, and paying less per meal than other sports received were acts of discrimination against Ponciano and his players due to Ponciano's age which were intended to force Ponciano to resign, constituted retaliation, and created a hostile work environment. As a result of all the above actions, Ponciano suffered several physical and emotional distress, as well as economic damage. The actions were motivated by age discrimination because the defendants wanted Ponciano to resign.

With respect to the causes of action for intentional and negligent infliction of emotional distress, he alleged the

7

defendants intentionally or negligently harassed and discriminated against him in handling his workplace complaints, in disseminating false information that was defamatory about his job performance, and in retaliation for the complaints that he stated. The defendants engaged in extreme conduct to force Ponciano to resign, because of his age, which should not be tolerated in civilized society. They owed him a duty of care to refrain from such activity, which they breached and caused him to suffer severe emotional distress.

## Demurrer to Operative Complaint and Subsequent Proceedings

The defendants filed a demurrer to the causes of action for intentional and negligent infliction of emotional distress in the operative third amended complaint. The defendants argued that the complaint failed to state facts to support either cause of action. In addition, as public employees, Perri and Sammis were immune from liability under Government Code section 820.2, and the District was immune from liability under Government Code section 815.2. Ponciano opposed the demurrer. On September 17, 2020, the trial court sustained the demurrer without leave to amend as to the causes of action for intentional and negligent infliction of emotional distress. The trial court also granted a motion by the defendants to strike punitive damages allegation.

The defendants filed a motion for judgment on the pleadings as to the remaining causes of action for age discrimination and hostile work environment on the ground that

8

Ponciano failed to exhaust his administrative remedies by filing a complaint with the DFEH and obtaining a right-to-sue letter.

Ponciano opposed the motion for judgment on the pleadings on the grounds that he had filed an appropriate tort claim with the human resources office of the District, and his causes of action for age discrimination and hostile work environment were common law claims that were not preempted by the FEHA. He attached a notice of claim that he sent the District on November 9, 2018. The claim notified the District of his allegations that he had been discriminated against in terms of his pay, causing him physical and emotional distress. He was subjected to a hostile work environment and false rumors about him, causing damages. The notice did not allege discrimination or harassment based on Ponciano's age. The notice also did not allege any conduct by Perri or Sammis against Ponciano. The defendant filed a reply.

In a supplemental opposition, Ponciano argued that the FEHA was not the exclusive remedy for employment discrimination. In addition, he argued that equitable principles should bar the application of the administrative exhaustion rule. Lastly, he requested leave to amend, but did not state how he could amend the complaint. The defendants filed a supplemental reply.

The trial court took the matter under submission on July 19, 2021. On July 21, 2021, the court granted the motion for judgment on the pleadings. On August 16, 2021, the court entered judgment against Ponciano in favor of the defendants. Ponciano filed a timely notice of appeal.

## DISCUSSION

## Standard of Review

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action." (*Stearn, supra,* 170 Cal.App.4th at p. 439.)

"We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.] If a complaint is insufficient on any ground specified in a demurrer, the order sustaining the demurrer must be upheld even though the particular ground upon which the court sustained it may be untenable." (*Stearn, supra,* 170 Cal.App.4th at p. 440.)

"A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. [Citation.] All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law." (*Adams, supra,* 51 Cal.App.5th at p. 670.)

10

## Common Law Claims

Ponciano contends that he may pursue common law causes of action to remedy age discrimination and a hostile work environment without exhausting administrative remedies under the FEHA. This is correct, but he has failed to identify a common law cause of action stated by the allegations of the complaint.

The FEHA declares discrimination on specified grounds, including age, is against public policy and an unlawful employment practice. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 890–891 (*Stevenson*).) An aggrieved person may file a complaint with the DFEH. (*Id.* at p. 891.) If the DFEH decides not to prosecute the case or fails to issue an accusation within a certain number of days, the DFEH must give the complainant a right-to-sue letter. (*Ibid.*) Only after receiving a right-to-sue letter may the aggrieved person file a civil action for remedies under the FEHA. (*Ibid.*)

The remedies available under the FEHA supplement other state law remedies for discrimination, including an employee's common law claims for injuries from employment discrimination. (*Stevenson*, *supra*, 16 Cal.4th at pp. 891–892.) Plaintiffs do not need to exhaust the FEHA administrative process to seek relief for injuries arising from employment discrimination under other causes of action that are otherwise available. (See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 88 (*Rojo*) [employee was not required to exhaust FEHA administrative process before bringing action for wrongful discharge in violation of public policy]; *Stevenson*, at p. 903 [exhaustion of administrative remedies not required to bring claim for wrongful discharge in violation of public policy against age discrimination].)

11

The "common law of this state provides any number of remedial theories to compensate for injuries 'relating to discrimination' (§ 12993, subd. (a))." (*Rojo*, *supra*, 52 Cal.3d at p. 74.) Employment discrimination cases " 'involve several causes of action arising from the same set of facts. A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interests of his or her client. [Fn. omitted.]' [Citation.] Although the common law theories do not per se 'relate to discrimination,' they are nonetheless a standard part of a plaintiff's arsenal in a discrimination case." (*Ibid.*, italics omitted.) Conduct which entitles an employee to damages for employment discrimination under the FEHA may also cause injury outside the bounds of statutory protection. (*Id.* at p. 81.) For example, an employer's discriminatory actions might constitute assault and battery, wrongful discharge, or outrageous conduct under a theory of intentional infliction of emotional distress. (*Ibid.*; *Medix Ambulance Service, Inc. v. Superior Court* (2002) 97 Cal.App.4th 109, 118.)

In this case, however, Ponciano has not identified any common law remedy that applies to the causes of action in the complaint labeled "age discrimination in the workplace" and "hostile work environment." (Capitalization omitted.) *Stevenson*, *supra*, 16 Cal.4th 880, which is the sole case that he cites on appeal, concerned a cause of action for wrongful discharge in violation of public policy. Ponciano clearly states he is not pursuing a claim for wrongful discharge, as he was still working for the District when he filed the operative complaint. Ponciano has not identified any other statutory or common law claims stated by the allegations of the complaint.

12

## Equitable Relief

Ponciano contends that the trial court should have excused him from compliance with the administrative exhaustion doctrine based on equitable principles, because obtaining a right-to-sue letter was a mere formality and his notice to the District was the functional equivalent of filing a complaint with the DFEH. We disagree.

The failure to exhaust administrative remedies by obtaining a right-to-sue letter is a jurisdictional defect. (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724.) Exhaustion of administrative remedies before the DFEH is a jurisdictional prerequisite to filing a FEHA claim. (*Ibid*.)

Ponciano's contention that his government tort claim satisfied FEHA requirements and exhausted administrative remedies is incorrect. "The purpose of FEHA's administrative exhaustion requirement is to ensure DFEH is provided the opportunity to resolve disputes and eliminate unlawful employment practices through conciliation. (*Rojo*[, *supra*,] 52 Cal.3d [at p.] 83 ['the exhaustion requirement serves the important policy interests embodied in the act of resolving disputes and eliminating unlawful employment practices by conciliation [citation], as well as the salutory goals of easing the burden on the court system, maximizing the use of administrative agency expertise and capability to order and monitor corrective measures, and providing a more economical and less formal means of resolving the dispute [citation]'].)" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 156.) For example, the names and addresses of the defendants who allegedly discriminated against the plaintiff must have been

named in the caption or the body of the DFEH charge in order to bring a civil lawsuit against them under the FEHA. (*Cole v. Antelope Valley Union High School Dist.* (1996) 47 Cal.App.4th 1505, 1513–1515.)

The government claim notice that Ponciano provided to the District did not satisfy the requirement to exhaust administrative remedies by filing a complaint with the DFEH. The notice did not mention age discrimination, did not allege any conduct by Perri or Sammis, and was not provided to the DFEH to allow the administrative agency to investigate the allegations. The trial court properly concluded the government claim notice was not a substitute for a complaint filed with the DFEH, and Ponciano failed to exhaust his administrative remedies by obtaining a right-to-sue letter.

Ponciano also asserts that the trial court should not have applied the administrative exhaustion doctrine because the defendants did not raise the issue earlier and have not produced witnesses for deposition. The defendants conducted discovery to discern whether a DFEH complaint had been filed and there is no evidence of undue delay, but in any event, the administrative exhaustion doctrine is jurisdictional. With respect to depositions, other statutes provide measures to enforce the discovery obligations.

**Leave to Amend**

Ponciano contends that the trial court should have given him leave to amend to allege a claim under the Education Code. "When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect

can be cured by amendment.  [Citation.]  ' "[I]f it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." '
[Citation.] . . . [Citations.]  Plaintiff has the burden to show there is a reasonable possibility the complaint's defects can be cured by amendment." (*Adams, supra,* 51 Cal.App.5th at pp. 670–671.)  On appeal, Ponciano failed to meet his burden to explain how he could amend the complaint to state a claim for recovery as an employee of the District under the Education Code.  Ponciano had four opportunities to state a viable cause of action.  No abuse of discretion has been shown.

## Intentional Infliction of Emotional Distress

Ponciano contends the third amended complaint states a cause of action for intentional infliction of emotional distress.  We disagree.

"The elements of the tort of intentional infliction of emotional distress are:  ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903.)  To be considered outrageous, the conduct must be " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Ibid*.)  "Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions,

or other trivialities." ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1051.)

"Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80; see *Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 946.)

None of the actions alleged in the complaint constituted extreme and outrageous conduct. The District's decisions about how to allocate resources to various sports programs, such as the use of air conditioning, compensation for food, and decisions about schedule changes, were standard program and personnel management decisions that did not amount to extreme and outrageous conduct. The District's calculation of Ponciano's salary and decisions about salary increases were also routine personnel management decisions that did not constitute outrageous conduct. To the extent that the District provided Ponciano with a negative performance evaluation, discussed termination of his employment, or failed to address his employment-related complaints, these were also personnel management decisions that did not rise to the level of extreme and outrageous conduct. The actions alleged in the complaint, regardless of the motivation behind them were common personnel management decisions that did not constitute outrageous conduct beyond the limits of human decency and do

16

not state a cause of action for intentional infliction of emotional distress in the employment context. The trial court properly sustained the demurrer to the cause of action for intentional infliction of emotional distress.

## **Negligent Infliction of Emotional Distress**

Ponciano contends the third amended complaint states a cause of action for intentional infliction of emotional distress. We disagree.

Negligent infliction of emotional distress is simply a negligence claim, not an independent tort. (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 818.) " 'The traditional elements of duty, breach of duty, causation, and damages apply. [¶] Whether a defendant owes a duty of care is a question of law. Its existence depends upon the foreseeability of the risk and a weighing of policy considerations for and against imposition of liability.' " (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.)

An employer's supervisory actions are inherently intentional and not the basis for a negligence claim. (*Semore v. Pool* (1990) 217 Cal.App.3d 1087, 1105.)

Ponciano has not alleged a duty owed to him that was breached, causing him to suffer serious emotional distress. Ponciano contends the respondents were negligent in their handling of his workplace complaints, dissemination of information about his job performance, and retaliation for his complaints. Even assuming the District had a duty to respond to Ponciano's workplace complaints, there is no allegation that failing to respond to his complaints was a substantial factor in

17

causing him to suffer serious emotional distress.  The only allegation concerning dissemination of information about Ponciano's job performance was a comment made by a trainer to parents at a high school game, but there is no allegation that the trainer had a duty to Ponciano to refrain from discussion of his job performance or employment status.  It is not clear which acts Ponciano alleges were taken in retaliation for making complaints, but all of the conduct discussed in connection with intentional infliction of emotional distress were common personnel and program management decisions.  Supervisory acts by the District were intentional conduct and are not the basis for a negligence claim.  In sum, Ponciano has not shown on appeal that the trial court erred by sustaining the demurrer to the cause of action for negligent infliction of emotional distress.  (See *Baldwin v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 1 Cal.App.5th 545, 549 [appellant has burden to demonstrate trial court erred].)

## DISPOSITION

The judgment is affirmed.  Respondents Citrus Community College District, Geraldine Perri, and Robert Sammis are awarded their costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.

We concur:


RUBIN, P. J.


BAKER, J.